[L. A. No. 9562. In Bank.—May 29, 1928.]

JAMES H. McNEECE, Respondent, v. GEORGE W. WOOD et al., Defendants; GEORGE H. WOOD, Appellant.

Luce & Swing for Appellant.

A. Haines and John H. McCorkle, for Respondent.

THE COURT.—This is an appeal by the defendant Wood from a judgment declaring forfeited a lease on the McNeece building in the city of San Diego.

By written instrument dated November 1, 1920, the plaintiff leased to the defendant Wood the building in question, which is a business block in said city. On February 17, 1923, Wood subleased the upper four floors to Mrs. Jennie H. Hipwell. Mrs. L. E. Geoghegan, a daughter of Mrs. Hipwell, became manager and had charge of the renting of

rooms of that portion of the building leased to her mother. On November 20, 1925, Mrs. Geoghegan rented room number 438 to Bradley and O'Brien, who took possession of the room two or three days later. One Logan was employed by Mrs. Geoghegan to operate the elevator in the building and was acting as such at the time of the transactions involved herein. Logan was also employed at the same time by the defendant Wood to keep watch and report to Wood any infractions of the law or other things not proper and right about the building. Bradley and O'Brien installed telephones in room 438 and started bookmaking operations. It is conceded by all parties that the operations of Bradley and O'Brien in said room were in violation of section 337a of the Penal Code. Logan became suspicious of the conduct of Bradley and O'Brien and endeavored to notify defendant Wood, but was unable to locate him. He then notified the police department of what was going on in said room. After the lapse of four or five days the room was raided by the police. The raid took place on December 1, 1925, the guilty parties were apprehended and prosecuted and the unlawful business ceased to be carried on in said room.

The defendant Wood subleased a room on the ground floor to one Joe England, who conducted a restaurant therein. England employed one Shepard to look after the restaurant during certain hours of the night. On the evening of June 19, 1926, police officers visited the restaurant to search the same for contraband liquor. Shepard was in the restaurant at the time. Five pints of whisky were found on the premises by the officers. Shepard was arrested and he entered a plea of guilty to the charge of unlawful possession.

On December 18, 1925, the plaintiff served written notice of the forfeiture of the original lease on the defendant Wood and his subtenants and twelve days later filed suit to have the forfeiture declared and possession restored to the lessor. Subsequently the plaintiff by way of supplemental complaint filed on July 2, 1926, set up the alleged unlawful possession of liquor on the part of Shepard on June 19, 1926. The cause was tried and the court declared the lease forfeited for breach of the following covenant of the lease:

"It is further agreed and understood that said lessee shall not use or permit to be used said premises for any improper or unlawful purpose, and any such improper or unlawful use shall work a forfeiture of this lease."

The trial court refused to consider as having any bearing on the rights of the parties another provision of the lease as follows:

"It is further hereby agreed that if the lessee shall at any time refuse or fail to pay rent as herein provided to be paid by him or shall refuse or fail to keep any of the covenants herein contained, and such condition shall continue for a period of 30 days, then and in that event, the lessor may at his option declare this lease forfeited and may retake possession of said premises without process of law."

█ The first contention of the appealing defendant is that the court should have read both clauses of the lease together and that when they are so read there is evidence from the document itself that the parties intended no forfeiture to take place until the lessee should have opportunity to remedy any alleged breach of a covenant and that such opportunity should continue for at least thirty days. Section 1641 of the Civil Code provides: "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." This is a familiar rule of construction and when due regard is given to it there is much force in the contention of the defendant that when these two clauses of the lease are read together the second clause helps to interpret the first and evidences an intention of the parties that no forfeiture should at once take place for a breach of any of the covenants of the lease. At least it must be said that when the two clauses are read together an uncertainty or ambiguity arises requiring a construction to be placed on the language used by the parties in order to declare their intention. As there is nothing in the evidence to explain the uncertainty and thus determine what was meant we turn to the law for guidance in the construction of the terms of the lease. █ At once we are met with the code provision as follows: "A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created" (sec. 1442, Civ. Code). Examination of the cases in this state shows that our courts

have not hesitated to give this rule of interpretation full application. "Forfeitures, as such, are not favored by the courts, and are never enforced if they are couched in ambiguous terms" (*Cleary* v. *Folger*, 84 Cal. 316, 321 [18 Am. St. Rep. 187, 24 Pac. 280]). "A forfeiture can be enforced only when there is such a breach shown as it was the clear and manifest intention of the parties to provide for" (*Randol* v. *Scott*, 110 Cal. 590, 595 [42 Pac. 976, 977]). "The burden is upon the party claiming the forfeiture to show that such was the unmistakable intention of the instrument. If the agreement can be reasonably interpreted so as to avoid the forfeiture, it is our duty to do so" (*Quatman* v. *McCray*, 128 Cal. 285, 289 [60 Pac. 655, 656]). Reference to cases of like import might be multiplied. (See *Johnson* v. *Kaeser*, 196 Cal. 686, 700 [239 Pac. 324]; *Jameson* v. *Chanslor-Canfield Oil Co.*, 176 Cal. 1 [176 Pac. 369]; 6 Cal. Jur. 362; 12 Cal. Jur. 633; 15 Cal. Jur. 779.) It seems reasonable to conclude that the parties to the lease here in question intended that the lessor could not take advantage of the breach of any covenant therein on the part of the lessee until the expiration of thirty days after the breach. As thirty days had not expired when the notice of forfeiture was given and action taken in the courts to have the forfeiture declared the said court action in each case was premature.

Even if our conclusion as to the intention of the parties under the lease might be to the contrary the equities of the case do not call for the drastic remedy of forfeiture under the facts presented. As to the original cause of action it appears that room 438 was rented on November 20th. Possession was taken by Bradley and O'Brien about November 22d. Several days prior to the December first following, the employee and agent of the defendant Wood notified the police department of the violation of law in the building and the violators were promptly arrested and prosecuted. What more could the lessee Wood have done? He acted through his agent with the utmost promptness. It would seem to be highly inequitable under the facts here shown to have deprived him of his estate in the property. The fact that Mrs. Geoghegan testified that she knew when she rented the room that bookmaking was to be carried on there would not estop the lessee Wood from taking prompt action to

oust the malefactors from the building and thus avoid the forfeiture.

█ As to the cause of action set forth in the supplemental complaint it appears that the liquor was in the possession of an employee of the sublessee without the knowledge or consent of the lessee or the sublessee. Assuming, as contended by the plaintiff, that the acts of a sublessee are binding on the lessee it would also appear to be highly inequitable to forfeit the lease on account of one act of unlawful possession on the part of the employee of the sublessee in the absence of some notice or knowledge of the infraction of the law on the part of the lessee or his subtenant. If such a rule be applied the lessee of an office building or hotel would indeed be in a precarious position for any infraction of the law on the part of an employee or guest or invitee or licensee on the premises and entirely unknown to the lessee of the premises would *ipso facto* work a forfeiture of the lease. If such result be contemplated by the parties it should be evidenced by their agreement in no uncertain terms.

█ The plaintiff relies on section 23 of the Volstead Act (41 Stats. at L., 305, 314 [27 U. S. C. A., secs. 35–37]), as authorizing the forfeiture. That section provides that "any violation of this title upon any leased premises by the lessee or occupant thereof shall, at the option of the lessor, work a forfeiture of the lease." It may well be questioned whether an employee or a guest or a licensee of the lessee or tenant in possession is an "occupant" of the premises as contemplated by the section relied upon. Webster defines the word "occupant" as "one who occupies; especially a tenant in possession of property, as distinguished from the actual owner; by extension, in law, one who occupies and claims property that is without an owner." When this meaning is given to the word the unreasonable and absurd consequences of including within its meaning one who has no responsibility for the conduct of the premises such as to bind the innocent lessee by his unlawful act are obviated. We conclude that a single unlawful act on the part of such an one is not sufficient to work a forfeiture of the lease under the written agreement and the circumstances here shown. It necessarily follows that the evidence is insufficient to support the findings and that the judgment is unsupported. The judgment is therefore reversed.