Richmond

## NEWPORT NEWS REDEVELOPMENT AND HOUSING AUTHORITY

### v.

### EARLEAN HUNTER

November 22, 1978.

Record No. 770513.

Present: All the Justices.

*C. V. Spratley, Jr. (Saunders, Carleton, Morrison, Stephenson and Spratley,* on brief), for plaintiff in error.

*David Andrew Rosenberg (Jerry H. Lawson,* on brief), for defendant in error.

COMPTON, J., delivered the opinion of the Court.

This appeal arises from an effort to evict a tenant from a public housing project. The sole issue is whether "good cause" existed for termination of the lease in question when it was shown that the tenant engaged in an unlawful business on the demised premises.

In September 1973, the appellant Newport News Redevelopment and Housing Authority let to appellee Earlean Hunter by written lease on a month-to-month basis a dwelling unit in Dickerson Courts, a public housing project in Newport News. The lease provided, *inter alia*, that a ground for termination arose if a tenant "engaged in . . . any unlawful business . . . on the said premises." The lease further provided for termination upon written notice and specified that such notice could "only be given for good cause, including but not limited to nonpayment of rent, serious or repeated interference with the rights of other tenants, serious or repeated damage to the premises, creation of physical hazards, or overincome status or any other violation of this Lease."

On April 5, 1975, an undercover police officer purchased alcoholic beverages from the tenant Hunter at the demised premises. Subsequently, Hunter pled guilty and was convicted for the illegal sale of alcoholic beverages in violation of The Alcoholic Beverage Control Act. Code §§ 4-1 to -126. Thereafter, the Authority gave the tenant a proper thirty-day notice to vacate the premises, indicating that the reason for termination of the lease was because the tenant had been "engaged in illegal business on the premises."

The tenant refused to vacate and, in October of 1975, the Authority obtained from the general district court an unlawful detainer warrant seeking possession of the premises. Judgment in favor of the Authority was entered in that court in December of 1975. Upon appeal by the tenant from that judgment, the circuit court, following a *de novo* hearing without a jury, found in favor of the tenant and in the January 1977 judgment order appealed from denied the Authority's request for possession of the premises. The tenant was represented by counsel in both the district and circuit courts.

During the circuit court trial, the tenant testified that she was a widow, that she lived in the premises with her eight children, that she was unemployed and that her sole income was from Social Security and welfare payments. The Authority's project manager testified that the tenant "had never given her any trouble". The manager further stated that the tenant had always been "very co-operative in anything that she had ask[ed] her to do, and that she paid her rent and was a good tenant."

The circuit judge, in finding for the tenant, noted that the purpose of the Authority's project was to provide housing for persons of low income and stated that the tenant would have difficulty in obtaining other living quarters in view of her poor financial condition and the size of her family.

The Authority, contending that the circuit court erred in finding for the tenant, points out that the uncontradicted evidence showed that Hunter breached the lease. It notes that this recipient of public housing was afforded in the course of the proceedings below the constitutional safeguards against arbitrary eviction, *i.e.*, adequate notice, full hearing and right to counsel. Accordingly, the Authority argues, there was no justification for the failure of the trial court to award the Authority judgment for possession of the premises in question.

The tenant argues that proof of "an isolated incident of unlawful behavior" is insufficient to constitute good cause for eviction under the circumstances of this case. She contends that an eviction for a "single lease violation" would render her "property interest" in public housing "valueless." Contending that on appeal the presumptively correct decision of the court below should not be reversed unless wholly unsupported by the evidence, the tenant urges that the circuit court's finding of lack of good cause is binding on us. She notes that no evidence was presented to show that she had a history of illegal activity or to show that her conduct affected the quiet enjoyment of the premises by other tenants. She points out that her conduct did not involve physical violence or adversely affect the health, safety or welfare of other tenants. She also argues that her need for public housing 'far outweighs" the Authority's interest in evicting her. Citing various federal regulations pertaining to admission standards for low-income housing, 24

C.F.R. § 860.205(b) (3), (d) (1977) and lease-termination requirements, 24 C.F.R. § 866.4(l) (1) (1977), she says the Authority may not properly evict her under these facts, and that the judgment of the circuit court was correct. We disagree.

We believe that the requirement of good cause for termination of a lease in a public housing project is met when it is shown, as here, that the tenant engaged in the illegal sale of alcoholic beverages upon the leased premises. Such conduct, prohibited by strict regulations governing the sale of spirits in this Commonwealth, is a serious violation of the material terms of the written lease. Even though a public housing authority is more restricted in its freedom of action than a private landlord, such a body nevertheless has no duty to provide premises which serve as a base for criminal activity. To uphold the trial court's action here would impose just such a duty upon this Authority. The stated purpose of the Virginia Housing Authorities Law is to provide "safe and sanitary dwelling accommodations for persons of low income". Code § 36-2. An activity such as this, conducted within the project units and which is known to attract the criminal element as customers, is detrimental to the operation of such "safe" living quarters for the disadvantaged. And it matters not that repeated unlawful acts have not been proved. The lease proscribes engagement in *any* unlawful business on the leased premises whether on one occasion or many.

Accordingly, we hold that the trial court erred in finding that good cause for termination of the lease had not been shown. We will, therefore, reverse the judgment below and enter final judgment here in favor of the Authority for possession of the premises.

*Reversed and final judgment.*