736 P.2d 1175

**CITY OF PHOENIX, a municipal corporation, Plaintiff-Appellee,**

v.

**Jereline BELLAMY, Defendant-Appellant.**

**No. 1 CA–CIV 8812.**

Court of Appeals of Arizona, Division 1, Department B.

Feb. 3, 1987.

Reconsideration Denied March 12, 1987.

Review Denied May 12, 1987.

Roderick G. McDougall, Phoenix City Atty. by Edward E. Brogan, Asst. City Atty., Phoenix, for plaintiff-appellee.

Community Legal Services by Albert H. Duncan and Leslie Ann Sansone, Phoenix, for defendant-appellant.

## OPINION

CORCORAN, Judge.

The primary issue presented in this appeal is whether a public housing tenant's single violation of the law constitutes a material breach of the terms of a public housing lease, thereby justifying termination of the lease.

The facts are not disputed. Appellant Jereline Bellamy has been a tenant of public housing owned and operated by appellee City of Phoenix (City), pursuant to A.R.S. §§ 36–1401 *et seq.*, since 1967. On or

about May 8, 1985, she signed a lease with the City wherein she agreed *"not to use the dwelling for any illegal purpose."* The lease also provided that it could be terminated for *"serious* or repeated violations of material terms of the lease, including but not limited to failure to make any rental payments due under the lease or failure to fulfill the TENANT obligations hereunder, or for other good cause."

On June 13, 1985, Bellamy was arrested for possession of dangerous drugs and possession of marijuana, both felonies. On September 11, 1985, Bellamy pleaded guilty to one felony count of possession of dangerous drugs and she was later sentenced to probation.

On August 30, 1985, the City gave Bellamy notice that it was terminating her lease because of her illegal use of the premises. After Bellamy refused to vacate the property, the City filed a forcible entry and detainer action on October 1, 1985. The trial court held that Bellamy had breached the lease and found her guilty of forcible detainer, from which judgment she now appeals. This court has jurisdiction pursuant to A.R.S. § 12–120.21(A)(1).

Bellamy argues that possession of drugs on a single occasion does not constitute a material breach of her lease with the City, and that therefore the City's attempt to terminate her lease is unjustified. The City, on the other hand, claims that Bellamy breached the lease when she used the premises for an unlawful purpose, thereby justifying both its termination of the lease and the trial court's finding that Bellamy was guilty of forcible detainer. We affirm the trial court's judgment.

Arizona courts have consistently upheld a landlord's right to terminate a lease upon the tenant's breach of a material covenant. *DVM Co. v. Bricker,* 137 Ariz. 589, 672 P.2d 933 (1983); *Bolon v. Pennington,* 6 Ariz.App. 308, 432 P.2d 274 (1967).

The Arizona Supreme Court has stated that when a lessor dictates the terms of a lease and the lessee accepts those terms, lessee is bound by that lease. "If he [the tenant] violates any of the covenants of the lease, and it is provided that such a viola-tion shall cause a forfeiture of his lease, the courts will enforce such forfeiture." *M. Karam & Sons Mercantile Co. v. Serrano,* 51 Ariz. 397, 407, 77 P.2d 447, 451 (1938).

Later Arizona cases have uniformly upheld the principle of law set forth by the *Karam* court. In *Bolon,* this court held that *any* breach warranted termination of the lease at the landlord's option, except for trivial breaches which should be ignored by the court. 6 Ariz.App. at 309, 432 P.2d at 275.

More recently, in *DVM,* the supreme court held that while it might ignore a trivial breach, citing *Bolon,* it will enforce a forfeiture if a lessee violates any of the covenants of a lease which provides that a violation will cause a forfeiture of that lease. 137 Ariz. at 592, 672 P.2d at 936.

■ Leases governed by the Arizona Residential Landlord Tenant Act are subject to termination by a landlord only for "material noncompliance by the tenant." A.R.S. § 33–1368(A). However, a public housing lease such as the one at issue is specifically excluded from the Act's coverage. A.R.S. § 33–1308(7).

By its express provisions, however, the lease at issue can be terminated only for *serious* or *repeated* violations of *material* terms. Bellamy argues that a material breach cannot be a single incident of unlawful activity. In support of this proposition she cites three cases from other jurisdictions which address whether a single violation is a material breach warranting termination. All of them, however, are distinguishable from this case.

■ In *Murphy v. Traynor,* 110 Colo. 466, 135 P.2d 230 (1943), the Colorado Supreme Court held that a tenant's conviction of one illegal sale of liquor to a minor did not justify the landlord's termination of the lease. The court relied on the general principle of law that contract provisions for forfeitures are disfavored and such provisions should be strictly construed against the party seeking to enforce a forfeiture. Although apparently a settled principle of law, *see, e.g., Murphy v. Traynor,* Arizona

has not embraced it in the landlord-tenant context, but has consistently upheld a landlord's right of forfeiting a lease for *any* breach, except one which is trivial. Further, the tenant in *Murphy* testified that he was not on the premises when the breach was committed and had no personal knowledge of its commission. By contrast, Bellamy was the perpetrator of the violation which resulted in her conviction of a felony.

The lease in *Murphy* provided that the tenant would not *"use* or permit the said premises to be used for any *purposes* prohibited by the laws of the United States or the State of Colorado." 110 Colo. at 468, 135 P.2d at 230 (emphasis added). The court acknowledged that "use" can be construed to mean either an isolated instance or a customary or continuing practice. It considered the latter definition to be more appropriate when applying the rule of strict construction against forfeitures. The *Murphy* court also noted that the lease at issue therein provided that the premises could not be used for any unlawful "purposes"—implying that more than a single violation was required—whereas the lease herein provided that the premises could not be used for any unlawful "purpose"—implying that a single illegal incident could constitute a material breach of the lease.

Bellamy also relies on *McNeece v. Wood,* 204 Cal. 280, 267 P. 877 (1928), in which the California Supreme Court considered violations committed by two different tenants. The first tenant had sublet the leased premises to a sublessee who operated a bookmaking operation. The tenant/sublessor immediately notified the police of the illegal use of the premises in an effort to stop the operation. The court refused to allow the landlord's attempted forfeiture since the lessee had done all he could do to immediately end the unlawful use of the property. The lessee in *McNeece* was not personally involved in the illegal activity, while Bellamy was the illegal perpetrator in this case.

The second instance at issue in *McNeece* involved another sublessee whose employee was found guilty of possession of contraband liquor. The court refused to allow the landlord to terminate the lease, holding inequitable a forfeiture due to a single violation by a sublessee's employee when neither the tenant nor sublessee had notice of the violation. Again, the tenant was not directly involved in the commission of the breach and had no knowledge of the breach.

Finally, *Ruffino v. Ruffino,* 138 So.2d 609 (La.App.1962), also cited by Bellamy, held that a lease prohibition against the unlawful use of demised premises implied a series of legal violations, as opposed to a single violation. The tenant pleaded guilty to a single misdemeanor charge of possessing and offering for sale untaxed tobacco. The court found that the lease was ambiguous as to whether one or more violations was intended. *Ruffino,* however, involved only a misdemeanor, while a felony is involved herein.

Bellamy also refers to the *Restatement (Second) of Property* § 12.5, comment c (1977), which interprets the phrase "the use of leased premises for an illegal purpose" as meaning continuous, illegal activity:

C. *When leased property is used for an illegal purpose.* The leased property is not used for an illegal purpose merely because an illegal act is committed on the leased property. The use of the leased property for an illegal purpose connotes continuous illegal conduct being carried on with the leased property being used as the base of operations. The necessary continuity may be present though the illegal action may take place only periodically.

*See also* 3A *Thompson on Real Property* § 1324 at 561 (1981); *Sherwood Medical Indus. v. Building Leasing Corp.,* 527 S.W.2d 407 (Mo.App.1975).

While Arizona courts will follow a restatement of the law in the absence of contrary authority, *Bank of America v. J. & S. Auto Repairs,* 143 Ariz. 416, 694 P.2d 246 (1985), we believe the issue before us is controlled by existing Arizona case law. The principle of law set forth in *Karam,* which has been consistently upheld, also applies here—courts will enforce a lease forfeiture if a tenant violates a provision of the lease. Although our courts have not addressed the specific question of whether

7

a single violation constitutes a material breach, their emphasis has been on whether *any* violation or breach occurred, rather than on the frequency of violations or breaches. *See, e.g., DVM Co. v. Bricker; Bolon v. Pennington.* The frequency or continuing nature of a violation is merely a factor to be considered in determining the seriousness of the breach and whether it is material or trivial.

■ A single conviction for felonious possession of dangerous drugs is a serious violation of a lease. In *Newport News Redev. & Housing Auth. v. Hunter,* 219 Va. 629, 249 S.E.2d 185 (1978), the Virginia Supreme Court held that a tenant's single conviction for the illegal sale of alcoholic beverages was good cause to terminate a lease in a public housing project. The court concluded: "[I]t matters not that repeated unlawful acts have not been proved. The lease proscribes engagement in *any* unlawful business on the leased premises whether on one occasion or many." 219 Va. at 632, 249 S.E.2d at 187; *see also Alexander v. Ivey,* 1 Ohio App.2d 249, 204 N.E.2d 394 (1963). Similarly, a single incident of possession of dangerous drugs may be regarded as a serious breach of the lease at issue. Like Bellamy, the tenant in *Newport News* argued that an isolated incident was insufficient cause to terminate the lease. Nevertheless, that court held that the conduct was a serious violation of the material terms of the written lease. 219 Va. at 632, 249 S.E.2d at 186. The same result must follow in this case.

The language in Bellamy's lease supports our conclusion that a single violation can be sufficient to terminate the lease. It expressly states that termination can occur for "serious *or* repeated violations of material terms of the lease." This implies that a single violation, as long as it is "serious" and violates a material term of the lease, will justify termination.

We believe a prohibition against unlawful conduct, especially in a public housing lease, is a material term. The City has undertaken to provide safe, sanitary and crime-free public housing. *See* A.R.S. § 36-1402. The provision against any unlawful use of the property is essential to that goal.

Bellamy was convicted of a felony committed on the leased premises. The breach occurred when Bellamy unlawfully possessed dangerous drugs on the premises. We do not believe that a felony conviction of this type is minor; to the contrary, Bellamy committed a serious breach of a material term of the lease. *Newport News.* The City could appropriately terminate the lease under the facts presented herein.

■ The City reurges several other issues which were raised in its motion to dismiss this appeal, which we denied. The City claims this court lacks jurisdiction because the notice of appeal was improperly signed according to rule 8(e), Rules of Civil Appellate Procedure. It was signed "Community Legal Services By: Albert H. Duncan, Attorney for Appellant." The City argues that the notice was not signed by Bellamy or her attorneys, and that it therefore violates rule 8(e). This position has absolutely no merit. We see no defect in the notice of appeal and find that it was properly signed and filed in compliance with rule 8(e). The test of sufficiency of a notice of appeal is whether sufficient notice of the appeal is conveyed without misleading or prejudicing the other party. *Hanen v. Willis,* 102 Ariz. 6, 423 P.2d 95 (1967). The City does not claim it was misled or prejudiced by the form of the notice of appeal.

■ The City also claims that the bond for costs on appeal set by the trial court was insufficient. The bond was filed on February 24, 1984. Any objections regarding the sufficiency of a bond must be made to the trial court within ten days after service of the bond, or they are waived. Rules 7(a)(3) and 10(b), Rules of Civil Appellate Procedure; *Monaghan & Murphy Bank v. Davis,* 27 Ariz. 532, 234 P. 818 (1925); *Pepsi-Cola Metro. Bottling Co. v. Romley,* 118 Ariz. 565, 578 P.2d 994 (App. 1978).

■ The City also suggests that this appeal is frivolous, and that therefore sanctions should be imposed against Bellamy pursuant to A.R.S. § 12-349 and rule 25, Rules of Civil Appellate Procedure. Despite our holding, the legal questions

presented in this case were ones about which reasonable persons could differ. Therefore, the appeal was not frivolous. *Cooper v. Cooper*, 130 Ariz. 257, 635 P.2d 850 (1981). The City's request for sanctions is denied.

Finally, on August 14, 1986—three months after the City filed its reply brief—the City's counsel, Edward E. Brogan, filed a document entitled "Advice to the Clerk." In that document, Mr. Brogan asserted to the court that Bellamy was arrested and incarcerated for possessing drugs and for the sale of drugs to Phoenix policemen on or about July 27, 1986. The filing of that document is an attempt to supplement the record before this court by informing it of extraneous and after-the-fact prejudicial assertions not then proven and which are not proper for consideration in this appeal. The only pertinent issue in this court is whether Bellamy's acts which predated the City's Notice to Vacate, dated August 30, 1985, constituted a breach of her lease. The City's "Advice to the Clerk" is stricken from the record.

The judgment is affirmed.

GREER and KLEINSCHMIDT, JJ., concur.