Filed 8/16/16  P. v. Borger CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>PHILIP VINCENT BORGER,<br><br>      Defendant and Appellant. | A142682<br><br>(Mendocino County<br>Super. Ct. No.<br>SCUKCRCR1374654002) |

After he was charged with possession of methamphetamine for sale, appellant Philip Vincent Borger moved under Penal Code section 1538.5[1] to suppress certain evidence that had been seized by law enforcement officers.  Once the trial court denied the motion, Borger pleaded no contest to the charge and was placed on probation.

On appeal, he challenges the denial of his motion to suppress.  We have examined his arguments and find them unmeritorious.  Accordingly, we will affirm the order from which this appeal is taken.

FACTUAL AND PROCEDURAL BACKGROUND

In a warrant affidavit filed October 2, 2013, Officer Peter Hoyle sought a warrant to search two properties owned by Burke Miller, one of which was 9150 Laughlin Way in Redwood Valley.  Officer Hoyle explained that in May he had executed a search warrant there and seized 194 marijuana plants, 8.7 kilograms of processed marijuana, a scale,

---

[1] All further undesignated statutory references are to the Penal Code.

1

firearms, and over $47,000 and that Miller had text messages consistent with selling drugs on his cell phone. In September, another officer had flown over the other property and had seen marijuana. A few days later, Officer Hoyle looked at photographs from that flyover and saw marijuana on the property. That same day, Officer Hoyle also looked at photographs from Google Earth taken in August and saw marijuana on both of Miller's properties. The affidavit sought authorization to search a variety of locations, including "all vehicles under the control of by [*sic*] the occupants."

The magistrate issued a warrant to search both properties for a variety of items, including: marijuana; "personal property tending to establish and document the possession, sales, and cultivation of marijuana," "a conspiracy to cultivate and sell marijuana," or "the identity of persons in control of areas where said contraband may be found" ; and "any video or audio media, any picture and text messaging, which tends to show evidence of criminal activity pertaining to manufacture, processing or sales of controlled substances." The warrant also authorized a search of a number of containers and locations, including "all vehicles under the control of by [*sic*] the occupants."

According to testimony given at the preliminary hearing, Officer Hoyle executed the warrant at the Laughlin Way property on September 26, 2013. During the execution of the warrant, Hoyle contacted Miller and Borger. The latter was in a bedroom in the residence on the property. The officer spoke to Miller about a billy club that had been found on the location and questioned him about Borger's stay. According to Miller, Borger was "a house guest," a fact Borger himself acknowledged.

Borger gave Officer Hoyle the keys to a motor home on the north end of the property, and Hoyle's search of the motor home revealed metal knuckles, ammunition, a magazine for a pistol, and plastic bags that were found to contain methamphetamine. Borger admitted to the officer that his fingerprints would be found all over the bags. In addition to the items found in the motor home, in a bedroom in the Miller residence Officer Hoyle discovered a camera Borger claimed was his. In the same room, there was also a bag of clothing belonging to Borger.

On October 28, 2013, the Mendocino County District Attorney filed a criminal complaint charging Borger with one count of possession of methamphetamine for sale and one count of being a felon in possession of ammunition, the latter count being based upon a 1976 Ohio conviction. A preliminary hearing was held on January 28, 2014, and based upon the evidence introduced at the hearing, Borger was held to answer for possession for sale of methamphetamine.[2] An information filed January 31, 2014, charged Borger with possession of methamphetamine for sale (Health & Saf. Code, § 11378).

On April 10, 2014, Borger moved to suppress various pieces of evidence, including the methamphetamine from his motor home. Borger contended the search of the motor home exceeded the scope of the warrant because he was not an "occupant" of the residence at 9150 Laughlin Way. He also argued that if the term "occupant" were more broadly construed, the warrant would not satisfy the Fourth Amendment's particularity requirement. The district attorney's opposition contended Borger was an occupant and that the search was proper under the warrant's vehicle provision or its appurtenant building provision. Finally, the district attorney asserted that the evidence should not be suppressed because Officer Hoyle had relied in good faith on the warrant.

At the hearing on the motion to suppress, the court took judicial notice of the preliminary hearing transcript, warrant, affidavit, and return. Borger's counsel argued the warrant was "tailored" to a "class of people's vehicles who [*sic*] could be searched," and was "limited to people who had an ability to control the property" because "[t]hat's what 'occupant' means." Thus, searching the motor home exceeded the scope of the warrant, amounting to a warrantless search.

The court then conducted an evidentiary hearing at which Borger testified. He claimed he did not live at Miller's Laughlin Way residence. He said he had arrived at Miller's home the day before the search in a pickup truck. By the time Borger arrived, the motor home had already been at Miller's property for five or six days. Borger

---

[2] The court found insufficient evidence of the 1976 Ohio conviction, and it therefore did not hold Borger to answer on the possession of ammunition charge.

planned to leave the truck and depart in the motor home. He said he had called Miller and asked him if he could come down and do his laundry before leaving the next day for Oregon, and Miller agreed. Borger testified he told the police the motor home was his but refused to give the police permission to search. He testified he had had a video camera that "contained some pictures of a garden" and some "other pictures." Borger denied possessing the methamphetamine.

Officer Hoyle testified that the property was approximately two acres, with a residence at the southern edge. When he executed the warrant, the motor home was "probably 250 feet or so, maybe a little further" from the residence and about 100 feet from a workshop. The motor home appeared to be mobile, as it was not tethered to utilities, was not surrounded by the kind of clutter he had seen when such vehicles have been converted into residences, and was not on blocks.

When Officer Hoyle executed the warrant, Borger was in a bedroom in the house. A camera in that room had images of a marijuana garden. The officer asked Borger about the camera, and Borger admitted it was his. The officer also asked about access to the motor home, and "[t]here was some conversation that he'd been staying there for a couple of days at the residence." The officer searched the motor home "because [Borger] claimed to be a short-term resident – or occupant of the residence. [¶] [The officer] suspected that Mr. Miller was involved in a large-scale marijuana operation," and he knew "that the person in charge or the owner many times has people working for him," including as guards, and that motor homes are used by guards and to transport marijuana. Based on Borger's admission that the camera with the images of a marijuana garden was his, Officer Hoyle "believed he had some ties to the marijuana garden; and, as such, . . . wanted to search the vehicle to see if there was marijuana in the vehicle."

During argument on the motion, Borger's counsel stressed that Borger was not an "occupant." He argued the warrant would be overbroad if it were not construed to require "control and dominion" by a person living at the property. The district attorney responded "that an occupant includes anyone who's occupying the residence, not just an owner, but a houseguest as well." She also asserted probable cause to search existed

4

based on "an automobile exception to the warrant [requirement]." Borger's counsel noted the automobile exception had not been briefed and asked for time to brief the issue and argued there was not probable cause as to the motor home.

The court found Borger had left "the motor home on the property several days beforehand. He was sleeping there. His personal effects were there. He can exercise some dominion and control over whether someone's going to go into his room or over the premises in general. If the owner or occupant's gone, he would be the one in charge, I think, that's a natural inference. [¶] So I think that for purposes of the Fourth Amendment issues presented, that he is an occupant and, therefore, the mobile home is within the scope of the warrant as a vehicle of an occupant that's on the premises. And it's on that basis that I'm going to deny the motion to suppress." The court said it did not need to reach the district attorney's automobile exception argument.

On May 15, 2014, Borger pleaded no contest to the charge. On July 22, 2014, the court placed Borger on probation. Borger then filed a timely appeal.[3]

DISCUSSION

Borger raises a single argument on appeal. He contends the trial court erred in denying his motion to suppress the evidence found in his motor home. As we explain, we find no merit to his contentions.

I. *Standard of Review*

"In reviewing the trial court's ruling on the suppression motion, we uphold any factual finding, express or implied, that is supported by substantial evidence, but we independently assess, as a matter of law, whether the challenged search or seizure conforms to constitutional standards of reasonableness." (*People v. Hughes* (2002) 27 Cal.4th 287, 327.) "Thus, while we ultimately exercise our independent judgment to determine the constitutional propriety of a search or seizure, we do so within the context of historical facts determined by the trial court." (*People v. Tully* (2012) 54 Cal.4th 952,

---

[3] Although defendant pleaded no contest to the charged offense, his appeal is authorized even in the absence of a certificate of probable cause. (Cal. Rules of Court, rule 8.304(b)(4)(A).)

979.) We must view the evidence in the light most favorable to the order denying the motion to suppress, and we must accept the trial court's resolution of disputed facts and its assessments of credibility. (*Ibid*.) We are bound by the trial court's factual findings even though we might have reached a different conclusion had we been the finders of fact. (*People v. Woods* (1999) 21 Cal.4th 668, 674.)

II.   *Substantial Evidence Supports the Trial Court's Finding that Borger Was an "Occupant" of Miller's Property.*

Borger notes he was not named in the warrant and that it does not describe the personal property of anyone other than Miller, except for its reference to "all vehicles under the control of . . . the occupants." Relying on *Martin Marietta Corp. v. Insurance Co. of North America* (1995) 40 Cal.App.4th 1113 (*Martin Marietta*), an insurance coverage case, and the opinion in *McNeece v. Wood* (1928) 204 Cal. 280, Borger contends he was not an "occupant" of Miller's residence because there was no evidence he had a right to possess or control the premises.

We find these cases entirely inapposite. *Martin Marietta* discussed the definition of the word "occupancy" in an insurance policy, but in the end, the court decided it did not need to determine the scope of coverage under the term and concluded the phrase in which the word was used, " 'other invasion of the right of private occupancy,' " was subject to numerous interpretations. (*Martin Marietta, supra,* 40 Cal.App.4th at p. 1134.) The case therefore has no bearing on the question before us. *McNeece v. Wood,* a case involving the forfeiture of a lease, concerned the interpretation of the term "occupant" as used in the Volstead Act. (*McNeece v. Wood, supra,* 204 Cal. at p. 285.) The Volstead Act was the "national prohibition law . . . intended to prevent the manufacture and sale of intoxicating liquors for beverage purposes." (*United States v. Yuginovich* (1921) 256 U.S. 450, 460.) Discussing the term "occupant," the California Supreme Court made clear it was construing the word only as it was used in the Volstead Act, explaining, "It may well be questioned whether an employee or a guest or a licensee of the lessee or tenant in possession is an 'occupant' of the premises *as contemplated by the section relied upon*." (*McNeece v. Wood, supra,* 204 Cal. at p. 285, italics added.)

6

Neither the meaning of a similar term in an insurance policy nor the intent of a long-ago Congress in including the word "occupant" in the Volstead Act is of any relevance here. As the People correctly point out, "[t]echnical requirements of elaborate specificity once exacted under common law pleadings have no proper place" in the context of search warrants. (*Illinois v. Gates* (1983) 462 U.S. 213, 235.) Instead, "the warrant's language must be read in context and with common sense." (*People v. Eubanks* (2011) 53 Cal.4th 110, 134.)

Although we have found no California case construing the term "occupant" in a warrant, the People refer us to *People v. Sinclair* (1974) 36 Cal.App.3d 891 (*Sinclair*). *Sinclair* considered whether a deputy sheriff who entered a residence in response to report of a burglary, encountered the burglar, struggled with him at the front door, and was stabbed by the burglar was an "occupant" for purposes of the then-existing burglary statute, which provided greater punishment if the defendant intentionally inflicted great bodily injury on an occupant.[4] (*Id.* at pp. 894-895 & fn. 2.) The defendant contended the statutory term "occupant" "has a special meaning which includes some kind of a possessory right, but in any event does not include persons in the position of [a deputy sheriff] who was present only temporarily while in the performance of his official duties." (*Id.* at p. 895.) The *Sinclair* court disagreed, explaining, "In our opinion the evil which the Legislature intended to reach by the 1967 amendment of Penal Code section 461 was the evil of inflicting 'great bodily injury' on human beings during the course of a burglary and the word 'occupant' was intended to refer to any human being who was present within the 'premises burglarized,' i.e., the structure, even though temporarily there, as distinguished from someone who might be on the real property, but outside the structure. In our opinion the word 'occupant' was not intended to distinguish between people who held some type of legal possessory interest and those who did not." (*Id.* at

---

[4] With no apparent sense of irony, Borger, who places great reliance on a case decided under the Prohibition-era Volstead Act, calls the far more recent statute construed in *Sinclair* "antiquated." We find the reasoning of *Sinclair* sound, the age of the statute there at issue notwithstanding.

7

p. 897.)  The court went on to note that the term occupant is " 'not always susceptible of precise definition, its meaning varying according to the context[.]' " (*Ibid.*)

Like the court in *Sinclair,* we decline to apply an overly technical definition to the term "occupant" as used in the search warrant.  We further agree that the word "occupant" is not limited to those who have a legal possessory interest in the property. (See *Sinclair, supra,* 36 Cal.App.3d at p. 897.)  Here, the trial court specifically found Borger was able to exercise some dominion and control over his room and over the premises in general.  That finding is supported by substantial evidence, and we conclude Borger met the common-sense definition of an "occupant."  Moreover, since the police could hardly have been expected to know the precise details of Borger's relationship to Miller or the extent of Borger's right to be present on Miller's property, they would have been hard pressed to describe Borger's status "with any greater particularity[.]" (*People v. Bryant* (2014) 60 Cal.4th 335, 370.)  We hold " 'the breadth of the warrant . . . was commensurate with the scope of the investigation.'  We therefore conclude the language in the challenged warrant[] . . . was sufficiently particularized under the circumstances[.]" (*People v. Eubanks, supra,* 53 Cal.4th at p. 135.)

III.    *Because Borger Was an "Occupant" Within the Meaning of the Warrant, Case Law Regarding Searches of Nonresidents Is Irrelevant.*

Borger also contends he lacked a sufficient relationship to Miller's property to allow a search of his personal effects under authority of the warrant.  He contends he was not a resident of the property.  He agrees that if he had been a " 'resident' " found at home during the execution of a search warrant, "his personal effects could be searched if they were '. . . plausible repositories of the contraband described in the warrant.' (*People v. McCabe* (1983) 144 Cal.App.3d 827, 830 [*McCabe*].)"  But Borger argues a nonresident's personal property may be searched "only if someone within the premises has had an opportunity to conceal contraband within the personal effects of the nonresident immediately prior to the execution of the search warrant." (*Ibid.*)  He asserts there was no evidence anyone could have concealed marijuana in his motor home immediately prior to Officer Hoyle's arrival.

8

There are a number of flaws in Borger's argument. Initially, we note it is premised on a wholesale acceptance of his testimony at the suppression hearing. He contends he was not a resident of Miller's property because he rented a cabin elsewhere and was visiting Miller only temporarily to do his laundry. He did so testify, but the trial court was not obligated to accept Borger's version of events. In addition, Borger's objection that he was not a "resident" of Miller's property seems to us beside the point. The warrant at issue here permitted a search of all vehicles under the control of occupants of the property. We have already determined Borger met the definition of an occupant as described in the warrant. Thus, whether Borger was a resident—whatever *that* term might mean in this context—is not relevant to our analysis. As a result, we need not explore whether there was evidence someone on the premises had an opportunity to conceal contraband in Borger's effects immediately prior to Officer Hoyle's execution of the warrant. (Cf. *McCabe, supra,* 144 Cal.App.3d at p. 830.) Instead, we may simply rely on the trial court's finding that Borger was an occupant of Miller's property to conclude the search of Borger's motor home was within the scope of the warrant.

IV.     *Borger Forfeited Any Argument Regarding the Search of His Camera, and the Argument Is Meritless Even if Properly Preserved.*

On appeal, Borger seeks to raise an argument he did not make below. He contends the "warrantless search" of his camera was unlawful. He specifically concedes that the issues during the suppression hearing did not include "the legality of the search of [his] camera." He further acknowledges that his counsel below "challenged only the scope of the search warrant and the search of appellant's motor home." Despite these concessions, Borger argues his counsel did not forfeit any issue concerning the search of the camera. We disagree.

A motion to suppress under section 1538.5 "shall be made in writing and accompanied by a memorandum of points and authorities and proof of service. The memorandum *shall list the specific items of property or evidence sought to be . . . suppressed* and shall set forth the factual basis and the legal authorities that demonstrate why the motion should be granted." (§ 1538.5, subd. (a)(2), italics added.) In making

9

such a motion, "defendants must specify the precise grounds for suppression of the evidence in question[.]" (*People v. Williams* (1999) 20 Cal.4th 119, 130.) They may not "lay a trap for the prosecution by remaining completely silent until the appeal" about matters they should have presented to the trial court. (*Id*. at p. 131.) Here, Borger's motion included a list of items he sought to have suppressed, but neither the camera nor the photographs on it are among them. We therefore conclude Borger has forfeited any claim regarding suppression of the camera by failing to raise it below.[5]

Even if Borger's argument had been preserved, it would be meritless. He contends the evidence found in his motor home was the product of the unlawful search of his camera. Borger apparently argues that Officer Hoyle was led to search the motor home by the photographs of a marijuana garden found on appellant's camera. Officer Hoyle's motive for searching the motor home is not relevant. As the United States Supreme Court has explained, "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." (*Whren v. United States* (1996) 517 U.S. 806, 813.) The issuing magistrate had *already* made the necessary probable cause determination and had concluded the search could extend to the vehicles of occupants. Thus, the only relevant question was whether Borger was an occupant. On its face, the warrant authorized Hoyle to search the vehicles of occupants, and as we have previously explained, substantial evidence supports the conclusion that Borger was an occupant.

Furthermore, the search of the camera was lawful. As the People point out in their brief, the camera fell within the express terms of the warrant, which authorized the search and seizure of "any video or audio media, any picture and text messaging, which tends to show evidence of criminal activity pertaining to manufacture, processing or sales of

---

[5] Borger claims his counsel did not have the opportunity to challenge the legality of the search of his camera, but he cites to nothing in the record that would support this claim. He also contends the trial court's "refusal to allow [his] counsel to brief the issues concerning probable cause to search the motor home made any further attempt to address this issue an exercise in futility." But the trial court's ruling clearly indicated it did not reach the probable cause issue. Thus it is unclear to us how further briefing on this issue could have affected the trial court's ruling, and Borger offers no explanation.

10

controlled substances." Despite the People's argument, Borger does not even respond to this point in his reply brief. We therefore conclude that even if Borger's claims regarding the search of the camera had been properly presented, they would fail.[6]

DISPOSITION

The order denying the motion to suppress is affirmed.

_____

Jones, P.J.

We concur:

_____

Simons, J.

_____

Needham, J.

---

[6] Our determination that the argument is meritless obviates the need to address Borger's claim of ineffective assistance of counsel based on failure to include the camera in the motion to suppress. And since we uphold the search on other grounds, we also need not address the parties' contentions regarding the automobile and good faith exceptions to the exclusionary rule. (See *California v. Acevedo* (1991) 500 U.S. 565 [automobile exception]; *United States v. Leon* (1984) 468 U.S. 897 [good faith exception].)

11