**In re Robert E. THURMOND and Marile J. Thurmond, dba Best Western Country Squire Inn; fdba Best Western Country Kitchen Motel; House on the Hill, Debtors.**

**Bankruptcy No. 683–07538–W7.**

United States Bankruptcy Court, D. Oregon.

March 19, 1987.

Kent Anderson, Eugene, Or., for debtors.

D. Michael Wells and Lee C. Weichselbaum, Eugene, Or., for trustee.

MEMORANDUM OPINION

POLLY S. WILHARDT, Bankruptcy Judge.

This matter is before the court upon the objection by Ronald R. Sticka, trustee, to the debtors' claim of exemption in a mobile home and five acres of land. On May 20, 1983, debtors filed for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* On June 17, 1983, debtors filed their bankruptcy schedules including a Schedule B–4, property claimed as exempt. In their Schedule B–4, debtors claimed certain personal property. The debtors did

not claim an exemption in the mobile home or the five acres of real property.

On May 7, 1985, debtors' case was converted to one under Chapter 7 of the Bankruptcy Code. In its order of conversion, this court did not require any further schedules to be filed, nor were any filed.

On August 23, 1985, debtors amended their B–4 schedule, claiming as exempt a "mobile home at Country Squire 5 acres at McKenzie Ridge" under ORS 23.164.

The court makes the following findings of fact:

1. When the debtors filed their petition they resided in a rental home at 2196 North 23rd Street, Springfield, Oregon 97477.

2. For four to five months in 1982, the debtors' 24 year old son lived in a small, recreational travel trailer, not the mobile home now claimed under the debtors' amended B–4 schedule.

3. This travel trailer was located on an access road owned by the debtors at McKenzie Ridge, which road provides access from Camp Creek Road to Lot 101, a large lot also owned by the debtors. The access road is the present location of the mobile home now claimed as exempt.

4. The debtors' son left the travel trailer some time in 1982 to join the navy.

5. Debtors later disposed of the travel trailer. The record does not reveal when they did so.

6. The mobile home now claimed as exempt was located on the premises of the Country Squire Motel, the debtors' former business, prior to May 20, 1983, where it served as the golf pro-shop in 1982.

7. When the debtors' son returned from the navy some time before the debtors filed their Chapter 11 petition, he moved into the mobile home which had served as the pro-shop and which was still located on the premises of the Country Squire Motel. He resided there until some time in 1984 when the former Chapter 11 trustee, Paul Lansdowne, asked him to leave.

8. In the fall of 1985, after receiving a release of the mobile home from the Chapter 7 trustee the debtors moved the mobile home from the Country Squire Motel to its present location on the access road from Camp Creek Road to Lot 101 at McKenzie Ridge. No one has ever lived in this mobile home at its present location.

9. Debtors have attempted to have five acres partitioned off from Lot 101 to form Lot 123, the five acres they now claim as exempt. On December 4, 1980, debtors obtained approval of their application for partition from the Lane County Land Development Review Committee. This approval, valid for one year and subject to certain conditions, was appealed. On August 19, 1981, the Lane County Board of Commissioners considered the appeal and approved the partition also subject to certain conditions. Debtor Robert Thurmond testified that the debtors did not meet the conditions. In 1985 debtors applied for a septic tank permit for Lot 123. On August 14, 1985, the Lane County Building and Sanitation Division notified the debtors of the necessity of submitting to it an approvable plot plan by September 30, 1985, before it could proceed with processing their application. The notice indicates that the property was vacant at that time. Debtors did not respond, and the application was denied on March 12, 1986. The mobile home now located on the access road has never been located on Lot 101 or the proposed Lot 123.

The court also enters the following conclusions of law:

1. When a debtor has filed a Chapter 11 reorganization proceeding and it is later converted to a Chapter 7 the date the original bankruptcy petition is filed, rather than the date of conversion, is the date on which his exemption eligibility is determined. The law in the district of Oregon is unsettled as to which point of time controls for conversions from a Chapter 13 case to a Chapter 7 case. *In re Kao*, 52 B.R. 452 (Bankr.D.Or.1985). As yet no Oregon case has addressed this issue in the "11 to 7" context.

In *In re Williamson*, 804 F.2d 1355 (5th Cir.1986) the Fifth Circuit Court of Appeals held that the date of filing of a Chapter 11 petition and not the date of conversion to

Chapter 7 controls what exemptions may be claimed. In support of its position the court first noted the clear language of 11 U.S.C. § 348(a) and § 522(b). Under § 348(a) conversion of a case "does not effect a change in the date of the filing of the petition." Under § 522(b) an individual debtor may exempt any property that is exempt under "state or local law that is applicable *on the date of filing of the petition.*" (emphasis added). The court carefully distinguished the conversion of a Chapter 11 proceeding to a Chapter 7 proceeding from the conversion of a Chapter 13 proceeding to a Chapter 7 proceeding. It noted that certain considerations of policy and administration under Chapter 13 are not applicable in a Chapter 11 case. Specifically, the court noted that exemptions serve the limited purpose in Chapter 13 cases of determining whether creditors are likely to be repaid a greater percentage of their claims under a Chapter 13 plan than they would receive under a Chapter 7 liquidation. In a Chapter 13 case, the debtor remains in possession of the estate's property, and confirmation of the plan vests all property of the estate in the debtor. In a Chapter 11 case, the plan may call for sale or distribution of any or all of the estate's non-exempt property.

The court also noted that § 1306 expands the definition of estate property to include virtually all property acquired by a Chapter 13 debtor after the commencement of the case and before conversion. The court remarked that there is no comparable statute in Chapter 11.

Finally, the court noted that unlike a Chapter 11 debtor, a Chapter 13 debtor has an absolute right of dismissal. The court concluded that a Chapter 11 debtor has greater incentive to use the exemptions than does a Chapter 13 debtor.

I agree with the Fifth Circuit's reasoning in *Williamson* and endorse the distinction the court makes between the conversion of a Chapter 11 case to a Chapter 7 case and the conversion of a Chapter 13 case to a Chapter 7 case.

2. Debtors are attempting to claim this exemption under ORS 23.164, which provides that a debtor may claim as exempt:

[A] mobile home *and the property upon which the mobile home is situated,* that is the actual abode of and occupied by the owner, or the owner's spouse, parent or child, when that mobile home is occupied as a sole residence and no other homestead exemption exists ... ORS 23.-164(1) (emphasis added).

This court interprets the language of this section to require that real property claimed as exempt under its terms must have a mobile home situated on it at the time the petition is filed. When the debtors filed their Chapter 11 petition there was no mobile home on any of the property at McKenzie Ridge, not even on the access road, where the mobile home is now situated. Therefore, the debtors may not claim an exemption in any of the real property at McKenzie Ridge.

3. The court has also considered whether ORS 23.240, Oregon's alternative homestead exemption statute, might afford the debtors an exemption for the real property at McKenzie Ridge. ORS 23.240 provides, *inter alia:*

The homestead must be the *actual abode of* and occupied by the owner, or the owner's spouse, parent or child, ... (emphasis added).

I find that the provisions of ORS 23.240 will not enable the debtors to claim an exemption in any property at McKenzie Ridge, since at the time they filed their Chapter 11 petition on March 20, 1983, this property did not constitute the *actual abode* of any eligible person enumerated in ORS 23.240.

4. ORS 23.164(5) provides:

If a debtor owns a mobile home but not the property upon which the mobile home is situated, subsection (1), (2), (3) and (4) of this section shall apply....

Thus a debtor may claim an exemption in a mobile home alone even if it is not located on real property he owns and on which he is claiming an exemption at the time of filing his Chapter 11 petition. ORS 23.-164(1) contains the same provision as in

ORS 23.240 that the mobile home be the "actual abode of and occupied by the owner, or the owner's spouse, parent or child." In addition, ORS 23.164(1) requires that the mobile home be "occupied as a sole residence." The evidence supports a finding that the debtors' son occupied as his "actual abode" and "sole residence" the mobile home at the time debtors filed their Chapter 11 petition. The debtors resided in a rental home elsewhere. The mobile home did not constitute the "sole residence" *of the debtors*. However, the language of the statute appears to exempt a mobile home which is the actual abode and the sole residence of the owner's child if no other homestead exemption exists for the owner. It is not this court's responsibility to question the wisdom of the liberality of the exemption granted under ORS 23.164(1) and (5) under these facts. The language of the statute clearly seems to allow the exemption in the mobile home.

5. At the hearing, debtor Robert Thurmond testified that he had earlier intended to place the mobile home on the McKenzie Ridge property and make it available to his son upon his return from the navy. The debtors appear to be arguing, in support of an exemption for the real property, that the court should overlook the fact that when they filed their Chapter 11 petition there was no mobile home on the McKenzie Ridge property. They seem to be suggesting that the court should find that when the son left for the navy, the debtor and his son intended that the son should later return to live on the McKenzie Ridge property, thus satisfying the requirements of ORS 23.164(2). ORS 23.164(2) provides:

> The exemption provided for in subsection (1) of this section shall not be impaired by temporary removal or absence with the intention to reoccupy the mobile property as a home....

This court believes intent to return is a relevant factor in determining if the real property to which there is found to be an intent to return is, at the time of filing, the actual abode of a qualified family member. However, subsection (1) clearly indicates that for such real property initially to qualify as a homestead under ORS 23.164 it must have had a mobile home situated upon it. This court has ruled that within the context of Chapter 11 conversion to a Chapter 7 the point of time for such a determination to be made is at the time the bankruptcy petition is filed. As the facts here show no mobile home was situated on the real property at that time the issue of intent to return becomes moot.

Debtors' claim of exemption in the mobile home now located on the access road at McKenzie Ridge should be allowed. The debtors' claim of exemption in the five acres of real property at McKenzie Ridge should be denied.

This memorandum opinion contains the court's findings of fact and conclusions of law and pursuant to Bankruptcy Rule 9014, which incorporates Rule 7052, they will not be separately stated.

An order consistent herewith shall be entered.