**In re Gerold Allen KAPLAN Debtor.**

**Gerold Allen KAPLAN, Appellant**

v.

**PRIMERIT BANK, formerly known as Nevada Savings and Loan Association, Successor in Interest to Union Savings and Loan Association, Appellee.**

BAP No. AZ–88–1738–RASME.
Bankruptcy No. 86–4145 PHX SSC.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Feb. 14, 1989.

Decided April 5, 1989.

Allen L. Feinstein, Rawlins, Burrus Lewkowitz & Feinstein, Phoenix, Ariz., for appellant.

Beth J. Shapiro, Ridenour, Swenson, Cleere & Evans, Phoenix, Ariz., for appellee.

Before RUSSELL, ASHLAND and MEYERS, Bankruptcy Judges.

RUSSELL, Bankruptcy Judge:

## OPINION

Debtor's amended Schedule B–4 listed the debtor's interest in his pension plan and asserted that the plan was not an asset of the estate pursuant to 11 U.S.C. § 541(c)(2). Judgment creditor PriMerit Bank objected to the debtor's claimed exemption. The bankruptcy court held that the assets in the pension plan were property of the estate and were not exempt under federal or state law. We AFFIRM.

## FACTS

Gerold Allen Kaplan (debtor/appellant) is a medical doctor who is an employee, officer, and shareholder of Phoenix Radiology Associates, Ltd. ("PRA"). PRA's directors and shareholders are medical doctors who specialize in performing radiological services. PRA established and is the sponsor of the Phoenix Radiology Associated, Ltd.— Kaplan Defined Benefit Pension Plan II ("Kaplan Plan"), which is qualified under section 401 of the Internal Revenue Code.

The Kaplan Plan was executed by the debtor as trustee and by PRA as employer on December 15, 1986. It provides that the debtor, the sole beneficiary, has the ability to withdraw all or part of his contributions upon application of the trustee of the plan through the administrative committee. The debtor is the beneficiary, the trustee, and the administrative committee of the Kaplan Plan. The debtor also is 100% vested in the plan, which as of March 31, 1988, held "total fund balances" in excess of $1,000,000.

The debtor filed his Chapter 11 petition on September 3, 1986. On his Schedule B–3, the debtor listed as property not otherwise scheduled his interest in his "employer-funded ERISA profit sharing plan" and indicated that, pursuant to Bankruptcy Code section 541(c)(2), such "interest is not part of the assets of this estate." However, the debtor did not provide a monetary value of the Kaplan Plan's assets.

On September 16, 1986, the bankruptcy court issued an order scheduling the section 341(a) meeting of creditors, which was held on October 19, 1986. No interested party objected to the debtor's claimed exemptions, nor did any party seek to extend the bar date for filing objections to the debtor's claims of exempt property. Additionally, no interested party challenged the debtor's assertion that the pension plan was excluded from the bankruptcy estate.

PriMerit Bank (appellee) is a judgment creditor owed approximately $252,845.50 plus interest by the debtor. On October 29, 1987, upon a motion to dismiss or convert by Union Savings and Loan Association ("Union Savings"),[1] the predecessor in interest to PriMerit Bank, the bankruptcy court converted the case to Chapter 7. Thereafter, on November 17, 1987, the court issued another order scheduling the meeting of creditors for December 8, 1987.

On December 4, 1987, the debtor filed an amended Schedule B–4, listing as exempt his interest in the Kaplan Plan (then estimated at $500,000). In this schedule, the debtor asserted that the plan was *not* an asset of the estate pursuant to section 541(c). On December 31, 1987, after the creditors' meeting, PriMerit Bank filed an objection to the debtor's claim of exemption in the Kaplan Plan and an alternate motion to vacate the order converting the case. Neither the trustee nor any other creditors filed a timely objection to the debtor's claimed exemption. The debtor responded to the objection by arguing that the assets in the Kaplan Plan were either excluded from the assets of the estate or were exempt pursuant to federal or Arizona state law.[2]

A hearing was held on March 31, 1988 regarding PriMerit Bank's objection. On July 28, 1988, the bankruptcy court issued its decision and order holding that the assets in the Kaplan Plan were property of the estate and were not exempt under either state or federal law.[3] The debtor timely filed his notice of appeal on August 8, 1988.

## ISSUES

A. Whether the bankruptcy court properly held that the debtor's interest in the Kaplan Plan was not exempt and that the date of the filing of the petition, and not the date of conversion from Chapter 11 to Chapter 7, controls the time for claiming property exempt.

B. Whether the bankruptcy court properly concluded that the debtor's interest in the Kaplan Plan was not a spendthrift trust and was therefore property of the estate pursuant to section 541(a)(1)

## STANDARD OF REVIEW

A bankruptcy court's findings of fact are reviewed under the clearly erroneous standard and its conclusions of law are reviewed *de novo*. *Wien Air Alaska, Inc., v. Bachner,* 865 F.2d 1106, 1108 (9th Cir. 1989); Bankruptcy Rule 8013. A finding is clearly erroneous if, after a review of the record, the appellate panel is left with a firm and definite conviction that "error has been committed." *In re Burkhart,* 84 B.R. 658, 660 (9th Cir.BAP 1988).

## DISCUSSION

A. *Exempt Status of the Kaplan Plan and the Effect of Conversion from Chapter 11 to Chapter 7.*

■ Section 522(b) allows a debtor to exempt certain property from the bank-

---

**1.** PriMerit Bank, formerly known as Nevada Savings & Loan Association, is the successor in interest to Union Savings. For convenience purposes, all actions by Union Savings shall be deemed to be those of PriMerit Bank. The record, however, is unclear as to when PriMerit Bank became the current party in interest.

**2.** The debtor further argued that if such property were not exempt, then post-Chapter 11 filing contributions to the pension plan should be excluded from the bankruptcy estate and that

the estate must bear a tax liability that would result from a premature invasion of the plan assets.

**3.** The court's decision indicated that although the debtor had made substantial post-petition contributions to the Kaplan Plan, the issues of taxability and the effect of pre-petition and post-petition contributions were not before the court at that time. The court, therefore, declined to address those issues.

ruptcy estate. Section 522(d) indicates those federal exemptions available to a debtor. Section 522(b)(2)(A) provides that a debtor only may exempt "property that is exempt under Federal law, ... or State or local law that is *applicable on the date of the filing of the petition ...*" (emphasis added). Section 522(b)(2)(A) additionally provides that a state may "opt out" of the federal exemption scheme. Arizona has elected to opt out of the federal exemptions provided in section 522(d) and has instead adopted its own exemptions. *See* Ariz.Rev. Stat.Ann. § 33–1133(B).[4]

Arizona Revised Statutes ("ARS"), section 33–1126, governs a debtor's right to exempt certain money benefits or proceeds. This section was amended on May 5, 1987, and a new subsection B was enacted to provide an exemption for debtors who possess an interest in retirement plans qualified under section 401 of the Internal Revenue Code. ARS Section 33–1126(B) now provides:

> B. Any money or other assets payable to a participant or beneficiary from, or any interest of any participant or beneficiary in, a retirement plan which is qualified under sections 401(a) ... of the United States Internal Revenue Code ... shall be exempt from any and all claims of creditors of the beneficiary of participant. *This section shall not apply:*
>
> 3. *To the assets of bankruptcy proceedings filed before July 1, 1987* (emphasis added).

Because ARS section 33–1126(B) does not expressly provide for retroactive application, it does not apply to cases pending when the amended statute went into effect. *See Cheney v. Arizona Superior Court for Maricopa County,* 144 Ariz. 446, 449, 698 P.2d 691, 694 (1985); *State v. Pickrell,* 136 Ariz. 589, 593, 667 P.2d 1304, 1308 (1983); Ariz.Rev.Stat.Ann. § 1–244.

In the instant case, the debtor's Chapter 11 petition was filed on September 3, 1986 and was converted to Chapter 7 on October 29, 1987. ARS Section 33–1126(B) became effective on July 1, 1987 for all cases not filed before that date.

The debtor argues, erroneously, that the date of conversion to Chapter 7, and not the date of the filing of the Chapter 11 petition, should control the time for determining a claim of exemption. In support of this position, the debtor cites several inapposite cases. Two cases discuss the effect on exemptions due to *conversions from Chapter 13 to Chapter 7. See In re Lindberg,* 735 F.2d 1087, 1090 (8th Cir.), *cert. denied,* 469 U.S. 1073, 105 S.Ct. 566, 83 L.Ed.2d 507 (1984). *See also In re Winchester,* 46 B.R. 492, 495 (9th Cir.BAP 1984). Another cited case simply holds that the date of conversion from Chapter 11 to Chapter 7 controls the time for *filing a nondischargeability complaint. See F & M Marquette National Bank v. Richards,* 780 F.2d 24 (8th Cir.1985).

The Bankruptcy Appellate Panel has recently addressed the issue of the effect upon exemptions when a case is converted from Chapter 11 to Chapter 7. In *In re Magallanes,* 96 B.R. 253 (9th Cir.BAP 1988), the Panel stated that:

> [t]he converting of a case from one chapter of the Code to another chapter does not change the filing date of the petition nor the commencement of the case. 11 .U.S.C. section 348(a) (West 1979). Where a case is converted from Chapter 11 to Chapter 7, property of the estate is determined by the filing date of the Chapter 11 petition, and not by the conversion date. *Matter of Williamson,* 804 F.2d 1355, 1359–62 (5th Cir.1986); *In re Florida Consumer's Furniture Warehouse, Inc.,* 9 B.R. 7, 8 (S.D.Fla. 1981). Any schedules originally filed in the Chapter 11 case will apply to the Chapter 7 case upon conversion unless the court directs otherwise. Bankruptcy Rule 1019.

---

**4.** Arizona Revised Statutes, section 33–1133(B), provides:

> [n]otwithstanding subsection A, in accordance with 11 U.S.C. 522(b), residents of this state are not entitled to the federal exemptions provided in 11 U.S.C. 522(d). Nothing in this section affects the exemptions provided to residents of this state by the constitution or statutes of this state.

Any exemptions claimed by the debtor are also determined as of the Chapter 11 filing date. *In re Thurmond*, 71 B.R. 596, 598 (D.Or.), *aff'd*, 825 F.2d 414 (9th Cir.1987). Such exemptions are allowed pursuant only to those federal, state, or local laws applicable on the filing of date of the petition. 11 U.S.C. section 522(b)(2)(A) (West 1979).

*Magallanes*, 96 B.R. at 255.

We hold that the bankruptcy court properly concluded that September 3, 1986, the filing date of the debtor's Chapter 11 petition, controlled the time for determining the debtor's claim of exemption for his interest in the Kaplan Plan. Section 522(b)(2)(A) specifically provides that the controlling law is that "applicable on the date of the filing of the petition." We additionally find that the debtor's arguments are merely an attempt to obtain the benefits conferred under ARS section 33–1126(B), benefits to which the debtor is not entitled. Since the filing date was prior to July 1, 1987, the bankruptcy court correctly determined that the debtor was not entitled to take advantage of ARS section 33–1126(B), as amended. Therefore, the Kaplan Plan is not exempt from creditors of the bankruptcy estate.

**B.** *Debtor's Interest in Kaplan Plan is Property of the Estate*

■ Section 541(a)(1) provides that property of a bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." However, section 541(c)(2), which operates as an exception to section 541(a)(1), provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." Property that falls within this latter category is excluded from property of the bankruptcy estate. *See Matter of Goff*, 706 F.2d 574, 585 (5th Cir.1983).

The leading Ninth Circuit authority interpreting the term "applicable nonbankruptcy law" is *In re Daniel*, 771 F.2d 1352 (9th Cir.1985), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986). The *Daniel* court stated that:

> the phrase *"applicable non-bankruptcy law"* in 11 U.S.C. § 541(c)(2) was intended to be a narrow reference to *state* "spendthrift trust" law and not a broad reference to *all* other laws, including ERISA and IRC, which prohibit alienation. Therefore, the ERISA and IRC anti-alienation provisions in debtor's pension and profit sharing plan does [sic] not create a Federal non-bankruptcy exclusion under 11 U.S.C. § 541(c)(2).

*Daniel*, 771 F.2d at 1360. In reaching this definition, the Ninth Circuit relied upon the standard set forth in other Circuits which indicates that Congress did not intend to exempt such plans under section 541(c)(2). *Id. See In re Lichstrahl*, 750 F.2d 1488, 1491 (11th Cir.1985); *In re Graham*, 726 F.2d 1268, 1274 (8th Cir.1984); *Matter of Goff*, 706 F.2d 574, 585 (5th Cir.1983); *Matter of Gifford*, 93 B.R. 636, 639–40 (Bankr. N.D.Ind.1988).

The debtor argues that the recent Supreme Court decision *Mackey v. Lanier Collections Agency & Service, Inc.*, —— U.S. ——, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988) undercuts the rationale of *Daniel*. We disagree. *Mackey* held, *inter alia*, that a Georgia statute that singled out ERISA welfare plan benefits for protective treatment under Georgia garnishment procedures was preempted by ERISA. Since *Daniel* held that section 541(c)(2) applies only to traditional spendthrift trusts as defined by state law, *Mackey* has no relevance to the issues before this Panel. *Mackey* did not redefine traditional spendthrift trusts.

The debtor in *Daniel* was a physician employed by his own medical corporation. He also was the sole shareholder and director. His corporation formed a pension and profit-sharing plan, which he managed and controlled. The plan was qualified by the IRS and contained the standard anti-alienation provision required by ERISA and IRC. Thus, the facts of *Daniel* closely resemble those of the instant case. We must therefore determine whether the Kaplan Plan qualifies under "applicable state

law" as a spendthrift trust so as to fall outside the scope of property of the estate under section 541(c)(2).

Currently, no statute exists in Arizona establishing or recognizing the validity of spendthrift trusts. In the absence of any statute to the contrary, Arizona adopts the common law. Ariz.Rev.Stat.Ann. § 1–201. Additionally, in the absence of contrary authority, Arizona courts will look to the Restatement of the law for the appropriate rule. *See Bank of America v. J. & S. Auto Repairs*, 143 Ariz. 416, 694 P.2d 246 (1985); *City of Phoenix v. Bellamy*, 153 Ariz. 363, 366, 736 P.2d 1175, 1178 (App. 1987).

The *Restatement (Second) of Trusts* section 152 (1959) ("Restatement") defines a spendthrift trust as follows:

§ 152. Restraint on Alienation of Income

(1) Except as stated in §§ 156 and 157, if by the terms of a trust the beneficiary is entitled to the income from the trust property for life or for a term of years and it is provided that his interest shall not be transferrable by him and shall not be subject to the claims of his creditors, the restraint on the voluntary and involuntary transfer of his rights to the income accruing during his life is valid.

(2) A trust in which by the terms of the trust or by statute a valid restraint on the voluntary and involuntary transfer of the interest of the beneficiary is imposed is a *spendthrift trust* (emphasis added).

If these requirements are satisfied, then a valid spendthrift trust exists which is enforceable against all creditors.

■ The primary consideration in determining whether a trust qualifies as a spendthrift trust is the debtor's degree of control over his trust (i.e., the Kaplan

Plan). *See Restatement (Second) of Trusts* § 153(2) (1959) ("[i]f the beneficiary is entitled to have the principal conveyed to him immediately, a restraint on the voluntary or involuntary transfer of his interest in the principal is invalid."). A spendthrift trust will not exist if the sole beneficiary is also the sole trustee. *Restatement (Second) of Trusts* § 152 comment m (1959). "[A] person cannot secrete and insulate his property from his creditors by temporarily placing that property in what he styles a 'spendthrift trust' while the income and corpus of the trust remain payable to him." *Arizona Bank v. Morris*, 6 Ariz.App. 566, 435 P.2d 73, 75 (1968).[5]

■ The debtor essentially argues that the Kaplan Plan is a spendthrift trust because it contains an anti-alienation provision. However, no special language is required to create a spendthrift trust. *Restatement (Second) of Trusts* § 152 comment c (1959). Rather, courts look at the amount of "dominion and control" exercised by the debtor over the trust property to determine whether a spendthrift trust exists. *See Matter of Brooks*, 844 F.2d 258 (5th Cir.1988); *In re Daniel*, 771 F.2d 1352 (9th Cir.1985); *In re Lichstrahl*, 750 F.2d 1488 (11th Cir.1985); *In re Graham*, 726 F.2d 1268 (8th Cir.1984).

The debtor relies on *In re West*, 81 B.R. 22 (9th Cir.BAP 1987) to support his theory that the Kaplan Plan constitutes a spendthrift trust. In *West*, the debtor, as an employee of Intel Corporation, was automatically a participant in a qualified ERISA plan. The debtor was not a director or officer of the corporation, and he was not the trustee of the plan. *Id.* at 24. He had no interest in the corporation (other than 10 shares of corporate stock he acquired through the plan) and his only inter-

---

5. This quotation reflects the view of the Arizona Court of Appeals when it adopted Restatement section 156. *Id.* at 76. Section 156 provides:

Section 156. Where the Settlor is the Beneficiary

(1) Where a person creates for his own benefit a trust with the provision restraining the voluntary or involuntary transfer of his interest, his transferee or creditors can reach his trust.

The bankruptcy court based its decision, in part, on this section, presumably because of the debtor's degree of control over the Kaplan Plan and due to the debtor's status as a shareholder and director of the corporation. However, PRA is the settlor and creator of the trust, and not the debtor. Therefore, although the policy behind this section may be applicable to this scenario, Restatement section 156 is inapplicable to these facts.

est in the plan was the contributions by his employer. Although the debtor could borrow, with restrictions, from vested portions contributed by the employer, he could not withdraw employer contributions until he reached age 60, was terminated, became disabled, or died. Both the BAP and the bankruptcy court held that the debtor's qualified ERISA plan constituted a spendthrift trust under applicable state law.

The facts in the instant case differ greatly from those in *West* because the debtor is involved in virtually every aspect of the decision-making process of the corporation and the Kaplan Plan. He is a shareholder and director of PRA, which entitles him to control the operation of the business. He is the trustee, the sole beneficiary, and the administrative committee of the Kaplan Plan. He may borrow from the plan, and the fact that he has not done so is irrelevant. As trustee, he has control over the investment of the benefits, and he has the right to withdraw any or all of his contributions. He is not restricted from drawing from his account and may do so at any time despite the threat of tax penalties. The debtor has the freedom to invade his account, and such freedom invalidates the anti-alienation provision of the Kaplan Plan.

We hold that the debtor, as both the trustee and beneficiary, has complete "dominion and control" over the Kaplan Plan, thus preventing it from qualifying as a spendthrift trust under Arizona law. Therefore, the Kaplan Plan is included in the property of the estate.

C. *Tax liability, pre-petition and post-petition contributions*

The bankruptcy court did not rule on the issues of tax liability and pre-petition and post-petition contributions to the Kaplan Plan. The debtor has asserted that "judicial economy" warrants a determination of these issues by this Panel. We believe that the bankruptcy court is the appropriate forum to make such a determination. We therefore decline to address these issues.

## CONCLUSION

The Kaplan Plan is not an exempt asset pursuant to ARS section 33–1126(B), as amended, because the date of filing of the Chapter 11 petition, and not the date of conversion to Chapter 7, is the determinative date for a claim of exemption. The Kaplan Plan also does not qualify as a spendthrift trust and it is therefore not excluded as an asset of the bankruptcy estate pursuant to section 541(c)(2). We AFFIRM the holding of the bankruptcy court and we decline to decide the issues of tax liability and pre-petition and post-petition contributions to the Kaplan Plan.