**In re Richard James FLINDALL, Debtor.**

Stanley W. FOGLER, Trustee; First Interstate Leasing Service Corp.; and Kendrick M. Mercer, P.C., Plaintiffs,

v.

Richard James FLINDALL, Defendant.

**In re Ronald S. GARLIKOV, Reda S. Garlikov, Debtors.**

Claude PITRAT, Trustee: Kendrick M. Mercer P.C.; and First Interstate Leasing Service Corporation, Plaintiffs,

v.

Ronald S. GARLIKOV and Reda S. Garlikov, Defendants.

Bankruptcy Nos. B–88–3202 PHX RGM, B–88–3201 PHX RGM and B–88–4186 PHX RGM.
Adv. Nos. 88–765, 88–764.

United States Bankruptcy Court, D. Arizona.

Sept. 6, 1989.

John F. Emerson, Beus, Gilbert, Wake & Morrill, Phoenix, Ariz., for debtors.

Charles W. Lowe, Davis & Lowe, Phoenix, Ariz., for Stanley W. Fogler, trustee.

John Friedeman, Phoenix, Ariz., for Claude Pitrat, trustee.

Susan Wintermute, Robbins & Green, Phoenix, Ariz., for First Interstate Leasing Corp.

Bryan A. Albue, Murphy & Posner, Phoenix, Ariz., for Kendrick M. Mercer, P.C.

Robert P. Harris, Streich, Lang, Weeks & Cardon, Phoenix, Ariz., for Seattle First.

## OPINION AND ORDER GRANTING JUDGMENT ON THE PLEADINGS

ROBERT G. MOOREMAN, Chief Judge.

These matters come before the Court on the trustees' motions for judgment on the pleadings. The trustees objected to the exemptions claimed by the three debtors to their benefits in Employee Retirement Income Security Act (ERISA) qualified profit sharing plans, defined benefit plans, pension plans and Individual Retirement Accounts (IRA's). The trustee of the Ronald and Reda Garlikov estates also objected to other exemptions claimed by those debtors. Creditors, First Interstate Leasing Corp. and Kendrick M. Mercer, P.C., also filed objections to the exemptions claimed by the debtors as to the benefits in the plans and IRA accounts. The Court designated these objections as adversary proceedings. The trustees filed motions for judgment on the pleadings. The Court ordered the trustees' motions be consolidated for the purpose of hearing and deciding the objections.

The trustee in the two Garlikov cases moved for judgment on the pleadings only as to the objection to the exemptions claimed for the funds in the pension plans. His motion did not address the other exemptions to which he objected. Therefore, the trustee's motions in those two cases

will be treated as motions for partial judgment on the pleadings. The trustee and objecting creditors of the Flindall case only objected to the exemptions claimed for the funds in the various plans and IRA's.

On May 10, 1989, the Court conducted a hearing to consider the trustees' motions for judgment on the pleadings. After oral argument, the Court took the matter under advisement. Debtors filed responses to the trustees' motion for judgment on the pleadings and cross-motions for judgment on the pleadings. Replies, supplemental responses and supplemental replies were also filed. The parties have also filed statements of facts. Given the extent of the pleadings filed, the Court considers this matter fully briefed and is now prepared to rule on the trustees' motions and the debtors' cross-motions. Federal Rules of Civil Procedure 12(c) and Bankruptcy Rule 7012(b) provide that if matters outside the pleadings are presented and not excluded by the Court, a motion for judgment on the pleadings shall be treated as one for summary judgment. The Court will treat the trustees' motions for judgment on the pleadings as a motion for summary judgment in the Flindall adversary proceeding and as a motion for partial summary judgment in the Garlikovs' adversary proceeding.

The facts relevant to the Court's ruling are not in dispute. The Garlikovs have claimed exemptions in the amount of $1,257,619.00 for monies held by pension plans of which they are beneficiaries. Flindall has claimed like exemptions in the amount of $1,831,437.80 in various defined benefit plans and IRA's. These accounts and plans are qualified ERISA employee benefit plans. Debtors claim their exemptions based on state law pursuant to § 522(b) of the Bankruptcy Code as Arizona has opted out, Arizona Revised Statutes (A.R.S.) § 33–1133(B), and only state law exemptions are available. Debtors rely on an Arizona statute, A.R.S.

§ 33–1126(B) which provides that the following are exempt:

B. Any money or other assets payable to a participant or beneficiary from, or any interest of any participant or beneficiary in, a retirement plan which is qualified under § 401(a), 403(a), 403(b), 408 or 409 of the United States Internal Revenue Code of 1986, as amended, shall be exempt from any and all claims of creditors of the beneficiary or participant. This section shall not apply:

1. To an alternate payee under a qualified domestic relations order, as defined in § 414(p) of the United States Internal Revenue Code of 1986, as amended; or
2. To amounts contributed within one hundred twenty days before a debtor files for bankruptcy; or
3. To the assets of bankruptcy proceedings filed before July 1, 1987.

The interest of any and all alternate payees shall be exempt from any and all claims of any creditor of the alternate payee.

The trustees contend that A.R.S. § 33–1126(B) is unconstitutional for the reason that it is preempted by § 514(a) of ERISA, 29 U.S.C. § 1144(a).[1] They rely on the Supreme Court case of *Mackey v. Lanier Collections Agency and Service, Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), which found that a Georgia anti-garnishment statute was preempted by § 514(a) of ERISA. Debtors contend that *Mackey* is not controlling in a bankruptcy case. They assert that while ERISA § 514(a) preempts state law relating to ERISA plans, such state law is saved from preemption by § 522(b) of the Bankruptcy Code which refers to state law for determining what exemptions are available.

The debtors' reason that since § 522(b) incorporates state law, state law is then elevated to the level of federal law. They then rely on § 514(d) of ERISA, 29 U.S.C. § 1144(d)[2] and conclude that § 514(d) saves

---

**1.** Section 514(a) provides:
   Except as provided in subsection (b) of this section, the provisions of this title and the Title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any

employee benefit plan described in Section 4(a) and not exempt under section 4(b).

**2.** Section 514(d) provides:

the Arizona statute from ERISA preemption and thus the debtors' benefits in the various pension plans and IRA's are exempt.

Debtors also contend that the pension plans and IRA's are spendthrift trusts excluded from their bankruptcy estate by § 541(c)(2) of the Bankruptcy Code. Debtor further contends that the anti-alienation and anti-assignment provisions contained in the plans and IRA's required by § 401(a)(13) of the Internal Revenue Code and § 206 of ERISA protect benefits from attachment by general creditors. Debtors therefore assert that the trustees are unable to reach the funds of the plans and accounts. The trustees' and debtors' contentions regarding whether the plans and accounts in question do in fact fall within A.R.S. § 33–1126(B) need not be addressed given the Court's ruling.

The Court finds and concludes that given the clear language of *Mackey*, A.R.S. § 33–1126(B) is preempted by § 514(a) of ERISA. The debtors therefore are unable to use that state law to claim exemptions for their benefits in the various pension plans and accounts. The Court also finds that the pension plans, defined benefit plans, and IRA's are not excluded from the estate by § 541(c)(2) of the Bankruptcy Code as they are not spendthrift trusts under Arizona law. Since the plans and IRA's are neither exempt nor excluded from the estate, the trustees are not precluded from reaching those funds by the anti-alienation and anti-assignment provisions of ERISA and the Internal Revenue Code. The Court addresses each of the debtors' contentions as follows and for the reasons stated therein rejects them.

1. *That ERISA Preemption of A.R.S. 33–1126(B) Is Shielded By § 522(b)(2) of*

the Bankruptcy Code and 29 U.S.C. § 1144(d) (ERISA 514(d)).

Debtors rely on two Circuit Court decisions, arguing that *Mackey* has no effect upon their holdings. Debtors claim that in these two cases, *Matter of Goff*, 706 F.2d 574 (5th Cir.1983) and *In re Daniel*, 771 F.2d 1352 (9th Cir.1985), the courts saved state law from ERISA preemption. Debtors cite these two cases as authority for the proposition that ERISA § 514(d) saves state law from preemption whenever the Bankruptcy Code refers to state law.

Debtors' reliance on *Goff* and *Daniel* are misplaced as they have misconstrued the holdings of those cases. In *Goff*, the court neither addressed the issue of whether the state law in question there, the Texas spendthrift trust law, was preempted by ERISA, nor ruled that preemption was shielded by the Bankruptcy Code and § 514(d) of ERISA. The issue in *Goff* was whether the anti-assignment and anti-alienation provisions in ERISA qualified plans could be the basis for excluding the assets of those plans from the estate pursuant to 11 U.S.C. § 541(c)(2) of the Bankruptcy Code.[3] The debtor there urged that "applicable non-bankruptcy law" included the ERISA anti-assignment and anti-alienation provisions and therefore ERISA plans were excluded from property of the bankruptcy estate.

The *Goff* court, after reviewing the legislative history of § 541(c)(2), concluded that "applicable non-bankruptcy law" was limited to state spendthrift trust law and therefore the ERISA anti-assignment and anti-alienation provisions could not be used. Debtors conclude that the *Goff* court's ruling necessarily included a determination that the state spendthrift law was shielded from ERISA § 514(a) preemption. This is where debtors' argument fails. *Goff* only

**(d) Alteration, amendment, modification, invalidation, impairment, or supersedure of any law of United States prohibited.**
Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in sections 1031 and 1137(b) of this title) or any rule or regulation issued under any such law.

**3.** Section 541(c) provides in pertinent part as follows:
(c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate ...
(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title.

looked at the conflict between two federal laws, ERISA and Bankruptcy and concluded that ERISA § 514(d) made bankruptcy law, as to this issue, effective over ERISA and that ERISA did not broaden § 541(c)(2). The court stated:

It is well to make a final telling observation on the relationship between ERISA and the Bankruptcy Code. While ERISA preempts state law, 29 U.S.C. § 1144(a), it clearly was not intended to affect the operation of other federal law. It provides: "Nothing in this (Act) shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except pre-existing federal pension law) or any rule or regulation issued under such law." 29 U.S.C. § 1144(d). As we have already discussed, the Bankruptcy Code was, generally, intended to broaden the "property of the estate" available to creditors in bankruptcy and, specifically, intended to limit any exemption of pension funds. These policy-bases provisions of the Code would be frustrated were ERISA's anti-alienation and assignment provisions applied with a sweeping brush. Thus, ERISA's specific provision precluding interference with the operation of federal law renders the Bankruptcy Code effective over any ERISA provisions to the contrary.

706 F.2d at 586–87.

*Goff* did not hold that the state spendthrift laws were shielded from ERISA preemption as debtors claim. The court only held that while ERISA preempts state law, it is not intended to affect other federal law.

Debtors also contend that *Daniel* supports their position because it adopts *Goff.* In *Daniel,* the debtor claimed a profit sharing plan exempt under a California statute. The issue of whether that statute was preempted by ERISA was never raised nor ruled upon by the court. The court found that the profit sharing plan was not exempt because it did not comply with the Califor-

nia statute. Debtor also attempted to claim the plan exempt as a Federal non-bankruptcy law exemption under § 522(b)(2)(A) of the Bankruptcy Code.[4]

The debtor in *Daniel* contended that the anti-alienation and anti-assignment provisions of ERISA were federal non-bankruptcy law that made the profit sharing plan exempt under § 522(b)(2)(A). The Ninth Circuit, relying on *Goff,* held that:

The *Goff* case makes it clear that Congress never intended for the ERISA and Internal Revenue Code anti-alienation provisions to create exemptions or exclusions for pension plans under either the federal non-bankruptcy exemption of 11 U.S.C. § 522(b)(2)(A) or the non-bankruptcy exclusions of 11 U.S.C. § 541(c)(2).

771 F.2d at 1359.

The *Daniel* decision made no reference to ERISA preemption. *Goff* and *Daniel* held only that ERISA and Internal Revenue Code anti-alienation provisions cannot be used to create exemptions or to exclude property from the bankruptcy estate.

The debtors cite *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) for the proposition that ERISA preemption of the Arizona exemption statute is saved when other federal law refers to, relies upon, or incorporates state law. There the Supreme Court held that a New York statute was only partially preempted by ERISA. The New York Human Rights Law forbade a number of types of discrimination in employment, including discrimination in employee benefit plans on the basis of pregnancy. Title VII of the Civil Rights Act of 1964, which prohibits discrimination in employment based upon race, color, religion, sex or national origin, did not at that time prohibit discrimination in regard to pregnancy.

The Supreme Court held that § 514(d) of ERISA prevented preemption of those pro-

---

**4.** Section 522(b)(2)(A) provides:
(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in

which the debtors' domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place; . . .

visions of the New York Statute, which prohibited employment practices also prohibited by Title VII. Those provisions of the New York law which prohibited employment practices lawful under Title VII were preempted. The Court found that preempting the entire statute would "impair" the Title VII enforcement provisions.

The Debtors contend that under *Shaw,* preemption of the Arizona exemption statute would modify or impair the Bankruptcy Code and thus ERISA § 514(d) prevents preemption. Debtors interpretation of the *Shaw* ruling is too broad. In Title VII, state laws play a significant role in its enforcement as it requires recourse to available state law remedies. The Equal Employment Opportunity Commission (EEOC) is required to initially refer discrimination complaints to a state agency when state administrative remedies are available. The state administrative decision is then given substantial weight in the EEOC's subsequent proceedings. The Court stated:

> Given the importance of state fair employment laws to the federal enforcement scheme, preemption of the Human Rights Law would impair Title VII to the extent that the Human Rights Law provides a means of enforcing Title VII's commands. Before the enactment of ERISA, an employee claiming discrimination in connection with a benefit plan would have had his complaint referred to the New York State Division of Human Rights. If ERISA were interpreted to preempt the Human Rights Law entirely with respect to covered benefit plans, the State no longer could prohibit the challenged employment practice and the state agency would be authorized to grant relief. The EEOC thus would be unable to refer the claim to the state agency. This would frustrate the goal of encouraging joint state/federal enforcement of Title VII; an employee's only remedies for discrimination prohibited by Title VII in ERISA plans would be federal ones. Such a disruption of the enforcement scheme contemplated by Title

VII would, in the words of § 514(d), "modify" and "impair" federal law. 103 S.Ct. at 2902–2903.

The preemption of the Arizona exemption statute does not impair the Bankruptcy Code in the manner that preemption would have impaired the New York statute in *Shaw.* While preemption would have impaired the operation of Title VII, preemption here in no manner impairs the operation of the Bankruptcy Code. Although preemption prevents the debtors from exempting their benefits in the pension plans, this Court is unable to discern how the loss of an exemption impairs the operation of the Bankruptcy laws. While it is true that preemption destroys debtors' claimed state exemptions in the pension plans, it does so because the Arizona legislature singled out ERISA plans when it enacted this exemption statute. Nothing prohibits the Arizona legislature from providing for exemptions for any type of property where the legislation enacted does not otherwise run afoul of preemption. The Court, therefore, finds and concludes that the Arizona exemption statute is not saved from preemption by § 514(d) of ERISA as preemption does not invoke the provisions of that section. This Court finds more persuasive the positions of the trustees that the *Mackey* ruling compels the finding that A.R.S. § 33–1126(B) is preempted by ERISA § 514(a). The Supreme Court held that a Georgia State Statute which exempted ERISA plans from garnishment was preempted by ERISA § 514(a). The Court stated:

> ERISA § 514(A) preempts "any and all State laws insofar as they may now or hereafter related to any employee benefit plan" covered by the statute. 29 U.S.C. § 1144(a). We believe that under our precedents, Ga.Code Ann. § 18–4–22.1 is such a state law.
>
> The Georgia statute at issue here expressly refers to—indeed, solely applies to—ERISA employee benefit plans. See n. 2, *supra.* "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97,

103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983) (emphasis added). On several occasions since our decision in *Shaw*, we have reaffirmed this rule, concluding the state laws which make "reference to" ERISA plans are laws that "relate to" those plans within the meaning of § 514(a). See, e.g., *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, [47], 107 S.Ct. 1549, [1553], 95 L.Ed.2d 39 (1987); *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985). In fact, we have virtually taken it for granted that state laws which are "specifically designed to affect employee benefit plans" are preempted under § 514(a). Cf. *Pilot Life Ins. Co. v. Dedeaux, supra*, 481 U.S., at [48], 107 S.Ct. at [1553]; *Shaw v. Delta Air Lines, Inc., supra*, 463 U.S., at 98, 103 S.Ct. at 2900.

108 S.Ct. at 2185.

While the Georgia statute expressly referred to ERISA, the Arizona statute here refers to specific sections of the Internal Revenue Code. These sections govern the tax status of ERISA plans. Therefore, the Arizona statute relates to the ERISA benefit plans and is thus preempted. The Supreme Court in *Shaw*, stated:

> The breadth of § 514(a)'s preemptive reach is apparent from that section's language. A law "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with the reference to such a plan ... In fact, however, Congress used the words "relate to" in § 514(a) in their broad sense. To interpret § 514(a) to preempt only state laws specifically designed to affect employee benefit plans would be to ignore the remainder of § 514. 103 S.Ct. at 2899–2900.

The Arizona statute relates to ERISA benefit plans because it "solely applies" to plans that are qualified under the Internal Revenue Code provisions for ERISA plans.

In both *In re Komet*, 93 B.R. 498 (Bankr. W.D.Tex.1988)[5] and *In re Brown*, 95 B.R. 216 (Bankr.N.D.Okl.1989), the state statutes which were found to be preempted by § 514(a) of ERISA referred to plans or accounts which qualified under the Internal Revenue Code. This reference to those Internal Revenue Code provisions were sufficient to result in the state statutes being preempted as they related to ERISA. The Court in *Komet* stated:

> It is manifest to this court that the language in the first sentence of the Texas statute, "unless the plan does not qualify under the applicable provisions of the Internal Revenue Code," implicates and incorporates ERISA, and thus "relates to" ERISA plans.

93 B.R. at 500.

The Arizona statute requires that for the benefits to be exempt, the retirement plan must be qualified under § 401(a) (ERISA qualified pension, profit sharing or stock bonus plan), § 403(a) and (b) (ERISA qualified annuity), § 408 (ERISA qualified individual retirement account) or § 409 (ERISA qualified employee stock ownership plan) of the Internal Revenue Code of 1986. The statute's reference to these sections of the Internal Revenue Code by necessity incorporates ERISA. For the benefits to be exempt, the plan must qualify under ERISA. Therefore, the Arizona statute relates to ERISA and is thus preempted by § 514(a) of ERISA.[6] See also *Deposit Guaranty Bank v. Dr. John A. McLeod*, 102 B.R. 60 (Bankr.S.D.Miss.1989).

2. *That Debtors' Plans Are Spendthrift Trusts Excluded From The Estate.*

Debtors contend that the anti-alienation and anti-assignment provisions of their plans result in the debtors' interests in them being excluded from the property of

---

**5.** Withdrawn, rehearing granted.

**6.** The United States District Court for the District of Arizona in two consolidated appeals, *In re Seigel*, 105 B.R. 556 (D.Ariz.1989) and *In re Hirsch*, 98 B.R. 1 (Bankr.D.Ariz.), affirmed this Court's order entering summary judgment on behalf of the trustees. In an order of August 29, 1989, the District Court agreed with this Court's ruling that the debtors were unable to claim exemptions in ERISA qualified pension plans using A.R.S. § 33–1126(B) as that statute was preempted by ERISA.

the estate by § 541(c)(2) of the Bankruptcy Code. *Goff* and *Daniel* have expressly held that ERISA provisions cannot be used as non-bankruptcy law under § 541(c)(2). The Eighth Circuit in *In re Graham,* 726 F.2d 1268 (8th Cir.1984) also held that the anti-assignment and anti-alienation provisions required by ERISA and the Internal Revenue Code cannot be used to exclude ERISA plans from the estate under § 541(c)(2) or be the basis for an exemption under § 522(b)(2)(A).

The *Graham* court in its discussion of the legislative history of § 541(c)(2) and the intent of Congress stated:

> The change in the scope of property of the estate effectuated by the new Bankruptcy Code, the legislative history of § 541(c)(2), the exemption provisions of the Code and the preemption provision of ERISA all convince us that Congress did not intend "applicable non-bankruptcy law" to include ERISA. Rather, Congress only intended by § 541(c)(2) to preserve the status (of) traditional spendthrift trusts, as recognized by state law, enjoyed under the old Bankruptcy Act.

726 F.2d at 1271.

The court went on to say that since § 522(d)(10) provides for a "federal" pension benefit exemption, such benefits are part of the bankruptcy estate. The court stated:

> There is no indication whatever that Congress intended § 541(c)(2) to be a broad exclusion which would apply to keep all debtors' entire ERISA plan benefits out of the estate. To the contrary, pension benefits are specifically treated under the Code's exemption provision, clearly indicating that they were intended and assumed to be part of the estate. *Id.* at 1272.

*Graham* also rejected the argument that the anti-alienation and anti-assignment provisions required by ERISA and the Internal Revenue Code result in the pension plans being exempt under § 522(b)(2)(A). The court again looked at the legislative history in finding that these provisions cannot be the basis for an exemption. The court stated:

The House and Senate Reports on the "Federal law other than subsection (d)" provision provide the following illustrative list of property which might be exempted under Federal laws:

> Foreign Service Retirement and Disability payments, 22 U.S.C. 1104;
> Social security payments, 42 U.S.C. 407;
> Injury or death compensation payments from war risk hazards, 42 U.S.C. 1717; Wages of fishermen, seamen, and apprentices, 46 U.S.C. 601;
> Civil service retirement benefits, 5 U.S.C. 729, 2265;
> Longshoremen's and Harbor Workers' Compensation Act death and disability benefits, 33 U.S.C. 916;
> Railroad Retirement Act annuities and pensions, 45 U.S.C. 228(L);
> Veterans benefits, 45 U.S.C. 352(E);
> Special pensions paid to winners of the Congressional Medal of Honor, 38 U.S.C. 3101; and
> Federal homestead lands on debts contracted before issuance of the patent, 43 U.S.C. 175 ... (citations omitted)

The legislative history provides no further indication of the intended scope of this provision.

While the above list was not meant to be exclusive, we find the failure of Congress to include ERISA plan benefits probative of Congressional intent that ERISA was not a "federal law" upon which a § 522(b)(2)(A) exemption could be based. See *In re Goff,* 706 F.2d at 585. Furthermore, although the provisions of some of the statutes on the list creating a federal exemption are similar to the anti-alienation provision of ERISA, there is a conceptual distinction between the property exempted by the listed laws and the property covered by ERISA.

The pensions, wages, benefits and payments included in the illustrative list are all peculiarly federal in nature, created by federal law or related to industries traditionally protected by the federal government. In sharp contrast, ERISA regulates private employer pension systems. We thus conclude, as did the Fifth

Circuit, *id.* at 586, that Congress did not intend to include ERISA plans within the other "Federal law" exemption of § 522. Id. at 1273–74.

■ Since § 541(c)(2) of the Bankruptcy Code excludes only traditional spendthrift trusts from the bankruptcy estate, remaining is the issue of whether a spendthrift trust is created under Arizona law by the anti-alienation and anti-assignment provisions of the debtors' plans. The court finds and concludes that the debtors' pension plans and IRA's are not spendthrift trusts under Arizona law. It is undisputed that debtors are the beneficiaries, named trustees of the plans and administer the plans. The funds for the plans came from the various corporations which they control as officers and directors. These facts are sufficient to conclude that the plans would not qualify as spendthrift trusts under Arizona law.

There is no express statutory authority in Arizona for the establishment of a spendthrift trust. Arizona courts have long adopted various restatements when there is no contrary statutory or case authority. *In re Kaplan,* 97 B.R. 572 (9th Cir. BAP 1989); (Citing *Bank of America v. J. & S. Auto Repairs,* 143 Ariz. 416, 694 P.2d 246 (1985); *City of Phoenix v. Bellamy,* 153 Ariz. 363, 366, 736 P.2d 1175, 1178 (Ariz.App.1987)). The *Restatement (Second) of Trusts* (1959) is, therefore, the law which would be followed by the Arizona courts and thus is the non-bankruptcy law to which this Court should look in determining whether debtors' plans are excludable from property of the estate under § 541(c)(2).

It is important to note that the facts in the cases at bar are very similar to those in *In re Kaplan, supra.* There the debtor also was a physician employed by his own medical corporation of which he was a shareholder and director. The corporation formed a pension plan of which the debtor was a beneficiary, trustee and administrator of the plan. The Bankruptcy Appellate Panel held that Kaplan's plan, even though qualified under ERISA and the Internal

Revenue Code, failed to qualify as a spendthrift trust under Arizona law.

The *Kaplan* court also concluded that Arizona courts would look to the *Restatement (Second) of Trusts.* While the *Restatement* recognizes that an enforceable spendthrift trust may be created, certain requirements must be met. As the Court in *Kaplan* stated:

> The primary consideration in determining whether a trust qualifies as a spendthrift trust is the debtor's degree of control over his trust (i.e. the Kaplan Plan) ... The debtor essentially argues that the Kaplan Plan is a spendthrift trust because it contains an anti-alienation provision. However, no special language is required to create a spendthrift trust. *Restatement (Second) of Trusts* § 152 comment c (1959). Rather, courts look at the amount of "dominion and control" exercised by the debtor over the trust property to determine whether a spendthrift trust exists ...
>
> We hold that the debtor, as both the trustee and beneficiary, has complete "dominion and control" over the Kaplan Plan, thus preventing it from qualifying as a spendthrift trust under Arizona law. Therefore, the Kaplan Plan is included in the property of the estate.

97 B.R. at 577–78.

In the cases at bar, debtors were employed by the corporations which formed the ERISA pension plans. They also were the directors and shareholders. As to the pension and benefit plans, they were the trustees, beneficiaries and administrators of the plans. These facts clearly place these plans within the holding of *Kaplan.* See also *In re Swanson,* 873 F.2d 1121 (8th Cir.1989) (Teacher's retirement fund created by Minnesota statute was not a spendthrift trust as members were able to exercise dominion and control over the monies in the fund). These plans and accounts also do not qualify as spendthrift trusts because the debtors are also the settlors of the trusts, *Restatement (Second) of Trusts,* § 156 (1959). *Arizona Bank v. Morris,* 7 Ariz.App. 107, 436 P.2d 499 (Ariz. App.1968); *In re Kincaid,* 96 B.R. 1014,

1018 (9th Cir. BAP 1989); *In re Lichstrahl,* 750 F.2d 1488, 1490 (11th Cir.1985); *In re Gifford,* 93 B.R. 636 (Bankr.N.D.Ind.1988). While the debtors are not the settlors in name, they had complete control over the corporations which were the settlors. Consequently, to say the debtors are not settlors of the trusts would promote form over substance. The Court finds and concludes that the pension and benefit plans and IRA's are not spendthrift trusts under Arizona law and, therefore, are not excluded as assets of the bankruptcy estates under § 541(c)(2).[7]

3. *That The Anti–Alienation And Anti–Assignment Provisions Required By The Internal Revenue Code Prevent The Trustee From Reaching The Plans' Funds.*

Debtors' argument is that even if the pension plans are not spendthrift trusts under state law, the anti-alienation and anti-assignment provisions required by § 206 of ERISA and § 401(a)(13) of the Internal Revenue Code insulate the plan assets from the claims of creditors in the same manner as a spendthrift trust. Debtors argue that since plan participant creditors cannot reach plan assets the trustee is also unable to do so. Debtors in support of this line of reasoning cite an Internal Revenue Service (I.R.S.) Letter Ruling. This court is not bound by a Letter Ruling of the I.R.S. and declines to follow it.

By this argument, debtors attempt to obtain what they cannot through the front door by using the back door. Under *Goff, Daniel,* and *Graham,* the anti-assignment and anti-alienation provisions do not exclude these plans from the estate under § 541(c)(2) of the Bankruptcy Code. Neither do these provisions create an exemption under the non-bankruptcy law provisions of § 522(b)(2)(A). If the pension plan assets are included in the estate and are not exempt, the trustees may administer these assets for the benefit of creditors. The anti-assignment and anti-alienation requirements of ERISA and the Internal Revenue Code do not create a separate basis upon which pension plan funds are placed beyond the reach of the trustee.

Debtors also assert that if the trustees break the pension plans, the plans would be disqualified under the Internal Revenue Code and tax penalties would be imposed. Should this occur, the tax consequences will be a matter for the trustees to address during their administration of the estate. To suggest that a trustee may not administer or reach assets whenever adverse tax consequences may result is insupportable. There are many instances where a trustee's sale or other administration of an estate asset may result in tax liabilities.

Finally, one last issue of debtor, Reda Garlikov, needs to be addressed. She moves that the trustee's objection to her claimed exemptions be overruled contending that the objection was untimely under Bankruptcy Rule 4003(b).[8] The trustee filed a joinder in creditors', First Interstate Leasing Corp. and Kendrick Mercer, P.C., objections to debtors claimed exemptions on November 16, 1988. The creditors filed their objections to exemptions on September 23 and September 26, 1988. These objections were timely as the debtor stipulated with these two creditors to extend the deadline to file objections to September 26, 1988.

The Court finds that the trustee's objection to the claimed exemptions of Reda Garlikov should not be overruled on the basis it was untimely for two reasons. First, the trustee joined two timely filed

---

**7.** Debtor, Reda Garlikov, does not state on what basis she claims an exemption in her husband's pension plans. Since the plans were funded by her spouse, she presumably claims an interest as community property. Therefore, to the extent the exemption and spendthrift trust are disallowed in Mr. Garlikov's case, it must similarly be disallowed in hers.

**8.** Bankruptcy Rule 4003(b) provides:

(b) Objections to Claim of Exemptions. The trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors held pursuant to Rule 2003(a) or the filing of any amendment to the list unless, within such period, further time is granted by the court. Copies of the objections shall be delivered or mailed to the trustee and to the person filing the list and the attorney for such person.

objections by creditors to the exemptions claimed in the ERISA pension plans. *In re Moody,* 77 B.R. 566, 574 (S.D.Tex 1987); *In re Keyworth,* 47 B.R. 966, 970 (D.Colo. 1985). Debtor was put on timely notice of objection to her claimed exemptions in the pension funds and is not prejudiced by allowing the trustee to join in those objections. Second, to have a valid exemption in an opt out state, such as Arizona, a state statute must exist on which to base the exemption. Since the Court has held that A.R.S. § 33–1126(B) has been preempted by ERISA, no state law exists upon which debtor may claim an exemption in the pension plans. *Matter of Dembs,* 757 F.2d 777, 780 (6th Cir.1985); *In re Bennett,* 36 B.R. 893, 895 (Bankr.W.D.Ky.1984). Where no state law exists on which to base an exemption, the time limits of Bankruptcy Rule 4003(b) do not apply. Otherwise, a debtor could claim any exemption, regardless of how baseless it is, and prevail if no timely objection is filed. This would amount to exemption by declaration which has been rejected in *Dembs* and *Bennett.*

IT IS THEREFORE ORDERED granting the Trustee's Motion for Judgment on the Pleadings in the Flindall case;

IT IS ORDERED granting the Trustee's Motion for Judgment on the Pleadings as a Partial Judgment in the Garlikov cases; and

IT IS FURTHER ORDERED directing the Trustees to lodge separate written forms of judgment consistent herewith within thirty (30) days of the date of this order.