In re Kosta P. VELIS, a.k.a.
Konstantin P. Velis, Debtor.

Bankruptcy No. 86–07802.

United States Bankruptcy Court,
D. New Jersey.

Oct. 24, 1989.

Ravin, Sarasohn, Cook, Baumgarten, Fisch & Baime by Paul Kizel, Roseland, N.J., for debtor.

Teich, Groh & Frost by Alan I. Gorski, Trenton, N.J., for creditor, Mary Kardanis.

DANIEL J. MOORE, Bankruptcy Judge.

The Court presently considers the objections to exemptions filed by Mary Kardanis ("Movant" or "Creditor") in the Chapter 11 bankruptcy proceeding of Kosta P. Velis, a/k/a Konstantin P. Velis ("Debtor"), wherein Debtor seeks to exempt from property of the estate his interests in the Konstantin P. Velis Pension Plan and Trust ("Pension Plan"), the Konstantin P. Velis Keogh Plan ("Keogh") and the Konstantin P. Velis Individual Retirement Account ("IRA"), pursuant to the provisions of 11 United States Code ("U.S.C.") §§ 541(c)(2), 522(b)(2) and 522(d)(10)(E). Debtor has filed a cross motion to dismiss the petition. This is a core proceeding over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334, 157 and the standing Order of Reference entered by the District Court of New Jersey on July 23, 1984.

■ Debtor's cross motion to dismiss the objection to his claimed exemption is based upon the failure to file the objection within the period of limitations set by BR 4003. Rule 4003 provides that objections are to be filed within 30 days of the conclusion of the § 341(a) meeting or after amendment of the list of exemptions. The 341 meeting was conducted on February 11, 1987. The debtor filed his schedules on March 9, 1987. The motion objecting to the claimed exemption for the "retirement plans" was filed in January 1988. The creditor did not move to extend the time to file her objection. Based upon a strict interpretation of Rule 4003 the objection should be dismissed, however, both parties acknowledge that Courts have made exception to the requirement of filing a "formal objection" where the debtor had notice of the fact that the exemptions were disputed. *In re Starns,* 52 B.R. 405 (S.D.Tx.1985); *Matter of Young,* 806 F.2d 1303 (5th Cir.1987); *Matter of Hilary,* 76 B.R. 683 (Bankr.Minn. 1987).

As noted later in this opinion at page 66 this court entered an order authorizing the debtor to borrow funds from his pension, Keogh and IRA plans. Movant argues that the orders of October 5, 1987 and December 28, 1987 were sufficient actual notice of movant's position as to the claimed exemption as the orders preserved her rights and the right of the United States Trustee to assert that funds in the several plans are assets of the estate. Whether or not the movant's position as to the funds was notice of an objection to the claimed exemption is questionable, but in any event it was not timely. The issue of borrowing from the funds was first before the Court in September 1987 well after the date for filing the objection to the exemption. While "actual notice" may be substituted for the formal objection that notice should at least be timely.

Movant further argues that even if the October 5, 1987 and December 28, 1987 orders do not form the basis for considering her objection that the Court should nevertheless consider the merits of the objection. The Court agrees for several reasons including that upon which movant relies.

■ First, as movant asserts, there is an exception to Rule 4003 where there is a lack of statutory basis for the claimed exemption. *In re Bennett,* 36 B.R. 893 (Bankr.W.D.Ken.1984), *In the Matter of Rollins,* 63 B.R. 780 (Bankr.E.D.Tenn. 1986). Second, the exemption claimed by debtor is "the full amount allowed pursuant to 11 U.S.C. 522(d)(10)(E)" and requires a determination by the Court. Third, and perhaps the most important, this is a Chapter 11 case in which this Court will have to determine whether a plan is proposed in good faith and whether creditors will receive not less than they would receive if the debtor were liquidated under Chapter 7. Therefore, the issue of debtor's right to the claimed exemption must be addressed.

The following constitutes the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

\*    \*    \*

The following facts are uncontested. On December 18, 1986, Kosta P. Velis filed a voluntary chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of New Jersey. At the time the petition was filed, Debtor was sixty three (63) years old and has since reached the age of sixty five (65). Debtor is an orthopedic surgeon who is employed by the Doctor Konstantin P. Velis, P.C. ("Professional Corporation"), which is located at 420 E. 72nd Street, New York, New York. The Debtor owns 100% of the stock of the Professional Corporation. Debtor's wife is employed as the office manager of the Professional Corporation. Debtor has three children, a second year law school student, a college senior and a high school senior. All of the children intend to further their education at least as far as completing graduate school.

When Debtor filed for bankruptcy, he had vested rights in the pension arrangements which Debtor alleges are qualified plan within the meaning of 26 U.S.C. § 401(a) of the Internal Revenue Code and 29 U.S.C. § 1056(b)(1) of the Employee Retirement Income Security Act of 1974 (ERISA). Debtor's Schedules of Assets and Liabilities reflect that, as of the petition date, the values of the Pension Plan, KEOGH and IRA were $184,000, $162,478 and $9,100, respectively. *See* Rider to Schedule B–3(d). Debtor has claimed that his interests in these retirement arrangements as exempt from the bankruptcy estate the full amount allowed pursuant to 11 U.S.C. § 522(d)(10)(E). *See* Schedule B–4.

On October 15, 1987 the Court authorized the Debtor and his wife to borrow from the Pension Trust, KEOGH and IRA the sums of $467,605.46, $156,514.34 and $9,100.75, respectively. The Debtor had used the funds to finance the purchase of shares in two cooperative apartment units ("Co-ops"), located at 420 E. 72nd Street, New York, New York, from which Debtor conducts his medical practice. The Court authorized the incurring of indebtedness pursuant to 11 U.S.C. §§ 364(c)(2) and 105(a) with liens to attach to shares of Co-ops and proprietary leases relating to same.

On August 13, 1986, the Debtor (and his wife) entered into an agreement to purchase 857 shares of 420 East 72nd Street Tenants Corporation for $775,000.00. The Debtor and his wife paid $77,500.00 at the time the agreement was signed.[1] The balance of $697,500.00 was due at closing which was to be within 60 days of the Agreement. The need to finance the purchase of the Co-ops initially with retirement funds arose because of Debtor's inability to close with institutional financing in a timely manner. The prior financing that had been in place (a commitment for $620,-000.00 was issued on October 20, 1986) was upset when, on or about October 22, 1986, a $3.7 million medical malpractice judgment was rendered against Debtor in favor of Movant in the Supreme Court of New York. (The judgment was reduced to $2.1 million). Debtor's malpractice policy limit was $1 million. The judgement creditor vigorously pursued her judgement and levied against a joint bank account which at the time of the petition, had a balance of $183,000. The collection activity by Movant precipitated the filing of the bankruptcy petition on December 18, 1986.

In early December of 1986 the Debtor and his wife negotiated an extension of the closing date that was conditioned on the payment of $222,500.00 prior to December 31, 1986. These funds were withdrawn by the Debtor and his wife from the Pension Trust on or about December 30, 1986.

The gross incomes of Debtor and his spouse are presently $84,000 and $72,000, respectively. In 1986 Debtor's salary from his professional corporation was $120,-000.00.

Debtor argues that the IRA, Pension Plan and KEOGH are not property of the estate under 11 U.S.C. § 541(a) by reason of the exception provided by 11 U.S.C. § 541(c)(2), in that the plans contain the anti-alienation and anti-assignment provisions required by ERISA (29 U.S.C. § 1056(d)) and the Internal Revenue Code

---

**1.** The debtor's schedules require amendment to reflect his interest in the contract.

26 U.S.C. § 401(a)(13). Alternatively, Debtor argues that the Pension Plan, KEOGH and IRA are exempt from being property of the estate pursuant to 11 U.S.C. § 522(b)(2) or in the alternative as claimed in his Schedules § 522(d)(10)(E). Movant contends, first, that the Pension Plan, KEOGH and IRA are property of the estate as 11 U.S.C. § 541(c)(2) operates as an exemption as respects state spend-thrift trusts only and the retirement plans are not state spend-thrift trusts; second, that the Pension Plan, KEOGH and IRA are not exempt under 11 U.S.C. § 522(d)(10)(E), since that section exempts only "the Debtor's right to receive a payment" and Debtor had no present right at the date of the petition to any payments; third, that the Pension Plan, KEOGH and IRA were created personally by Debtor in violation of 11 U.S.C. § 522(d)(10)(E)(i) and are not exempt; and finally, that post-petition income from and appreciation in the corpus of the Pension Plan, KEOGH and IRA, if any, are property of the estate.

The Court considers what it deems are the two relevant issues: whether the Pension Plan, KEOGH and IRA are excludible from property of the estate under 11 U.S.C. § 541(c)(2) [2], and if not, whether Debtor's interests in them are exempt from the estate under 11 U.S.C. § 522(b)(2)(A) or § 522(d)(10)(E). Movant's argument that § 522(d)(10)(E)(i) excludes the pension arrangement from the exemption misreads the exception to the exemption. The exception is applicable only if all the conditions (i), (ii) and (iii) are applicable. Here, the third condition is not applicable as debtor's assertion that all plans are qualified has not been challenged. Whether the income and appreciation on the retirement arrangements are property of the estate is not relevant to but follows as a corollary to the determination to be made here.

One obvious concern of Congress in adopting ERISA was that the employee's interest in a pension plan be available to provide retirement income. While there were many other concerns including but not limited to expanded coverage (participation) and vesting, by far the majority of the provisions relate to the creation, enhancement and protection of the fund necessary to generate the benefits payable to plan participants. To that end Congress provided, *inter alia*, that "[a]ll assets of an employee benefit plan shall be held in trust by one or more trustees" 29 U.S.C. § 1103(a). To insulate the fund from the conduct of the participant Congress also provided "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated" 29 U.S.C. § 1056(d)(1). Thus, two of the three essential elements for the § 541(c)(2) exception are mandated by ERISA. Whether the restriction is enforceable is at issue here and, as hereinafter noted, has been at issue in many other reported cases. Enforceability under non-bankruptcy law is the third essential element to the § 541(c)(2) exception.

■ This Court has already held that a debtor's interest in an IRA is property of the estate within the meaning of 11 U.S.C. § 541(c)(2). *See In re Heisey*, 88 B.R. 47 (Bankr.D.N.J.1988). In *Heisey*, the debtor argued that the written agreements establishing his IRAs were trusts, containing ERISA required anti-assignment and anti-alienation provisions [3], and as such were properties excludable from the estate pursuant to 11 U.S.C. § 541(c)(2). *Id.* at 49. After noting the admonition of the bankruptcy court in *In re Mosley*, 42 B.R. 181 (Bankr.D.N.J.1984), that the anti-assignment and anti-alienation provisions of ERISA are not per se federal exemptions under 11 U.S.C. § 541(c)(2) for all ERISA-qualified pension plans, this Court concluded that IRAs constitute property of the bankrupt estate because of the debtor's ability to withdraw and thus control the entire fund on the date the bankruptcy petition was filed. *Id.* at 50. Debtor's IRA

---

**2.** "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title". 11 U.S.C. § 541(c)(2).

**3.** ERISA, 29 U.S.C. § 1051(6), excludes IRA's from the anti-alienation/assignment requirement.

is similar in terms and substance and is also property of the bankrupt estate.

Debtor still seeks to avoid an adverse determination concerning the excludable nature of his Pension Plan and KEOGH by maintaining that both are ERISA and IRC qualified; accordingly, it is said that both are excludable from the broad definition of property of the estate pursuant to 11 U.S.C. § 541(c)(2). In support of this proposition Debtor cites three cases. *In re Mosley*, 42 B.R. at 191, *In re Phillips*, 34 B.R. 543 (Bankr.S.D.Ohio 1983), *In re Threewitt*, 24 B.R. 927 (Bankr.D.Kansas 1982). These cases do not support Debtor's position and are distinguishable in that they involve ERISA-qualified, employer-created-and-controlled retirement plans.

■ Notably, the Fifth Circuit in *In re Goff*, 706 F.2d 574 (5th Cir.1983) and the Eighth Circuit in *In re Graham*, 726 F.2d 1268 (8th Cir.1984) have narrowly construed the phrase "applicable non-bankruptcy law", to include only state spendthrift trust law. The Fifth and Eighth Circuits also examined the legislative underpinning of the exemption provisions of § 522(b)(2)(A). They discerned a Congressional concern to protect the more traditional public benefits and welfare programs, and distinguished ERISA which focuses primarily on regulation of private pension benefits. As noted in *In re Atallah*, 95 B.R. 910 (Bankr.E.D.Pa.1989) the determination in *Mosley* that applicable non bankruptcy law includes ERISA is the minority position and the issue had not been determined by the Court of Appeals for this circuit.[4]

This Court finds *In re Goff* and *In re Graham* persuasive. In addition, the saving provision for a qualified pension arrangement found in 11 U.S.C. § 522(d)(10)(E)(iii) seems meaningless if a qualified plan (which with the exception of IRAs and SEPs must include the anti-alienation provision) is not property of the estate. There is no reason to exempt that which is not included as property of the estate.

Yet, interpreting § 541(c)(2) to include ERISA, as in *Mosley*, the present case is an example that ERISA anti-alienation provisions do not per se create an enforceable restriction on the transfer of a beneficial interest of the debtor in the retirement trusts.

In readdressing the question of whether a debtor's interest in a plan that is qualified under ERISA and the Internal Revenue Code is property of the estate or whether the anti-alienation provision required by those statutes bring the debtor's interest within the exception of 11 U.S.C. § 541(c)(2) it appears that case law has developed that is clearly entwined with the question of enforceability. While many cases discuss whether ERISA is included with the phrase "applicable law" in many, the discussion moves to the issue of "enforceability." Yet, in the opinion of this Court, the *Goff* Court could have included ERISA within the ambit of the phrase "non bankruptcy law" with the same result on the issue of enforceability. ERISA trusts are subject to the same scrutiny that a court would give to a spend thrift trust.

Several circuits have considered cases with facts remarkably similar to those under present consideration and have held that self-settled retirement plans or retirement-type arrangements are not excludable from property of the estate under 11 U.S.C. § 541(c)(2). *See In re Goff*, supra; *In re Graham*, supra; *In re Lichstrahl*, 750 F.2d 1488 (11th Cir.1985); *In re Daniel*, 771 F.2d 1352 (9th Cir.1985). *See also, In re Flindall*, 105 B.R. 32 (Bankr.D.Arz. 1989); *Herbert v. Fliegel*, 813 F.2d 999 (9th Cir.1987). The latter involved an Oregon statute broadly exempting pensions. In these cases, (and others not cited) the plans that created the trusts under scrutiny were ERISA qualified, all properly contained the required anti-alienation and assignment provisions in accordance with the IRC [26 U.S.C. § 401(a)(13)] and ERISA [29 U.S.C. § 1056(d)(1)]. *Goff* involved self-employed retirement trusts of joint debtors', one of whom was a debtor-physician, administered

---

**4.** In *In re Clark*, 711 F.2d 21 (3d Cir.1983) cited and discussed at page 70 of this opinion wheth- er the Keogh plan assets were property of the estate was not an issue.

by a third party bank pursuant to an ERISA qualified pension plan, *Graham* involved a 100% owned professional corporation's profit sharing plan administered by the debtor as trustee, *Lichstrahl, Daniel* and *Flindall* involved trusts established by a professional association as the settlor, and the P.A. employees including the debtors as beneficiaries, and *Herbert v. Fliegel* involved a self employed dentist's Keogh Plan. Generally, the Courts' common concern with the retirement arrangements was the extensive control all debtors had with respect to controlling and managing fund assets, especially given that only a premature withdrawal penalty prevented retirement fund dissipation [5]. These characteristics were found to offend the traditional policy considerations underlying spendthrift trusts. Although these cases involved the issue of plan compliance with relevant state spendthrift trust laws, or the Restatement, the reasons expressed in reaching the results there are as equally applicable here.

The *Goff* Court held "that neither law nor equity would afford self-settled KEOGH plans 'spendthrift trusts' exemption in bankruptcy" (footnote omitted) *Goff*, 706 F.2d at 588. In addressing the propriety of the judicially-drawn distinction between employer-created and self-settled plans, and the significance of the premature withdrawal tax penalty in self-settled plans, the Fifth Circuit stated:

> ... we disagree with appellants' characterization that the degree of beneficiary control over both types of pension plans [Employer-created-and-controlled vs. self-settled] is indistinguishable, thus rendering their separate treatment unreasonable. Under appellants' self-employed Keogh plans considerable control, including withdrawal authority, was retained. The only limitation upon withdrawal was a ten percent tax penalty. We find this to be significantly different from the usual case of employer-created funds in which the beneficiary employee has little or no control during the term of his employment, and may only withdraw

funds upon termination of employment. He must quit his job in order to gain premature access to his retirement funds. We cannot equate a "tax penalty" with "employment termination" as equal restraints upon withdrawal of pension funds. We thus find the court-drawn distinction a reasonable one, and appropriately made under the Bankruptcy Code. (Footnote omitted.)

*Goff*, 706 F.2d at 589.

The *Lichstrahl* Court, in rejecting the notion that two pension plans' anti-alienation provisions qualified them as spendthrift trusts under Florida law, wrote:

> [w]hile appellant as beneficiary cannot assign or alienate his interest in the trusts, he as sole officer and director of the settlor P.A. can amend or terminate the trusts. That appellant can only amend or terminate the pension plans in his capacity as agent for the P.A. is not important here. He alone enjoys the authority to act, whether as an agent of the settlor or in his own right as trustee and beneficiary. He therefore enjoys "absolute dominion" over the property of the trusts. The reasons for creating and enforcing spendthrift trusts would not be served if we were unwilling to look beyond legal forms in this case. *cf. Matter of Witlin*, 640 F.2d 661, 663 (5th Cir. 1981) ("There is ... a strong public policy that will prevent any person from placing his property in what amounts to a revocable trust for his own benefit which would be exempt from the claims of his creditors.").

*Lichstrahl*, 750 F.2d at 1490.

As in *Goff, Graham, Lichstrahl, Flindall* and *Daniel*, Debtor herein controls Dr. Konstantin P. Velis, P.C., the Settlor of the pension trust, Debtor's wife is the Office Manager and Trustee of the Trust and he and his wife are beneficiaries thereunder. That the Debtor and/or his wife, an insider, exercise considerable control over the pension trust is evidenced by the fact that both are indebted to the Pension Plan, KEOGH and IRA in the aggregate amount of $700,433.62, of which $467,605.46 is

---

**5.** A pension plan of a P.A. can be terminated without the adverse effect of a penalty.

owed to the Pension Plan alone. Post petition, on December 30, 1986 and on or about March 2, 1987, Debtor and his spouse withdrew from the Pension Plan $222,500.00 and $245,105.46, respectively, to finance the purchase of two co-ops in New York. Notwithstanding a retroactive court authorization to incur debt and grant liens entered on October 5, 1987, no formal note, security agreement, or assignment of proprietary leases was ever executed to evidence the initial advance of these funds from the pension trust at or before withdrawal. The funds were advanced on an unsecured basis. The act of withdrawal for a purpose other than retirement, and the risks of repayment inherent thereto are inconsistent with the preservation of retirement funds at the heart of ERISA as well as the strict provisions of ERISA relating to prohibited transactions (29 U.S.C. § 1108).

The *Herbert v. Fliegel* Court affirmed the District and Bankruptcy Court's denial of a state exemption to a doctor's Keogh plan stating that the policy in favor of the exemption by "strong public policy that will prevent any person from placing his property in what amounts to a revocable trust for his own benefit which would be exempt from the claims of his creditors" also quoting from *Matter of Witlin*, 640 F.2d 661 (5th Cir.1981) as did the *Lichstrahl* Court.

■ For the foregoing reasons, the Court finds that Debtor's interest in the Pension Plan and KEOGH Plan are not excluded as property of the estate under 11 U.S.C. § 541(c)(2), based on Debtor's and/or an insider's influence and control over same and based on the insignificant deterrence that imposition of an early withdrawal tax has on fund dissipation. The anti-alienation and anti-assignment provisions required by ERISA are simply not enforceable as to the Debtor's interest.[6] The Court notes, however, that based upon the case law that has been developing on this subject a different result could occur

with respect to the interest of a beneficiary in these same plans if the beneficiary were not in control. For instance, if the debtor was a secretarial employee of Dr. Konstantin P. Velis, P.C. and not an insider, the rationale of *Goff, Graham,* et al. could support a determination that the § 541(c)(2) exclusion was available. The Court now addresses the issue of whether the Pension Plan, KEOGH and IRA are properly exempt from the estate under 11 U.S.C. § 522(d)(10)(E).

\*       \*       \*

■ The arguments advanced by Debtor with respect to the exemptability of the Pension Plan, KEOGH and IRA are similar to those raised and decided by the Third Circuit in the case of *In re Clark*, 711 F.2d 21 (3d Cir.1983). In *Clark*, a 43–year old licensed family therapist appealed a final adverse ruling by the bankruptcy court which denied his claim to exempt his KEOGH retirement plan from property of his bankrupt estate, the result of which would have essentially placed assets beyond the reach of creditors. Contributions made into the *Clark* KEOGH retirement plan were tax-deductible and income tax on the fund and the earnings therefrom were deferred until withdrawal, which occurred when the plan participant reached the age of 59½, died or became disabled. In the event of withdrawal before the occurrence of these events, the plan participant would become obligated to pay regular income taxes and a 10% early withdrawal penalty, in addition to a five year prohibition on making further plan contributions. The bankruptcy court held that the debtor possessed no present right to receive payments from the plan and therefore the exemption claim did not fall within the literal meaning of § 522(d)(10)(E). *Id.* In affirming the decision of the bankruptcy court, the Third Circuit examined the legislative support for the exemption provisions contained in the Bankruptcy Code [11 U.S.C.

---

**6.** In this jurisdiction the law is that the anti-alienation provisions of a self-settled KEOGH Plan do not create an enforceable spendthrift trust. *Aronsohn & Springstead v. Weissman,*

230 N.J.Super. 63, 552 A.2d 649 (App.Div.1989). The rationale of the Court in *Aronsohn* is equally applicable to a case where the debtor controls a corporate settlor.

§ 101 et seq.] and referred to the following portion of the House Report on H.R. 8200:

The historical purpose of … exemption laws has been to protect a debtor from his creditors, to provide him with the basic necessities of life so that even if his creditors levy on all of his nonexempt property, the debtor will not be left destitute and a public charge. [This] purpose has not changed…. (citation omitted)

*Clark*, 711 F.2d at 23.

The Third Circuit then reasoned that the exemption of present KEOGH payments, to the extent necessary to support the debtor, is consistent with this goal. *Id.* When referring to "this goal", the Court was referring to that which it quoted from the House Report: to provide the debtor with the basic necessities in life so to prevent his becoming destitute and a public charge. Significantly, the majority concluded that the exemption of future payments equated with a concern for the debtor's long term security which contravened the express concerns of the statute itself. *Id.* Hence, the controlling law in this Circuit exempts a debtor's interest in a KEOGH plan under 11 U.S.C. § 522(d)(10)(E) only to the extent that a "present right" to receive payments exists and then only to the extent needed to sustain a debtor's basic needs.

This Court extended *Clark's* holding to IRA retirement arrangements in *Heisey*. In *Heisey*, the debtor maintained that even if the IRAs were property of the estate, 11 U.S.C. § 522(d)(10)(E) otherwise operated to exempt them from the bankrupt estate. This Court found that the IRAs were not exempt property within the meaning of 11 U.S.C. § 522(d)(10)(E) because the debtor had no "present right" to receive payments. *Id.* at 51.

Debtor seeks to distinguish *Clark* and *Heisey* in two ways. First, Debtor argues that he, unlike the debtors in *Clark* and *Heisey*, was over the age of 59½ when he filed his Chapter 11 petition and had the right to receive distributions from his KEOGH and IRA. Second, Debtor maintains that inasmuch as the Third Circuit in *Clark* "relied on and cited" (Debtor's proposed findings of fact and law, p. 10) the

bankruptcy court decision in *The Matter of Kochell*, 26 B.R. 86 (Bankr.W.D.Wis.1982), which decision was affirmed by the Seventh Circuit in *The Matter of Kochell*, 732 F.2d 564 (7th Cir.1984), this Court should expansively construe *Clark* so as not to establish a per se rule of exemption preclusion under § 522(d)(10)(E) when the debtor does not possess a "present right" to receive distributions from a retirement plan. Debtor reasons that the Seventh Circuit, in affirming the bankruptcy decision in *Kochell*, considered all factors, including age and earnings capacity, in determining whether a debtor's retirement account was reasonably necessary for his and his dependents' support. Debtor now moves the Court to employ the Seventh Circuit's so-called "all factors" test.

The Court rejects the notion that the Third Circuit "relied on" the bankruptcy court's decision in *Kochell* in deciding *Clark*. In referring to *Kochell*, the Third Circuit merely noted that this latter finding was consistent with case law in denying the exemption with respect to future payments from a retirement fund. It cited *Kochell* as one such example, specifically because the bankruptcy court in *Kochell* "squarely faced the issue of whether section 522(d)(10)(E) exempts pension plans themselves rather than present payments" and because that section was intended to "alleviate present rather than long-term need". *Id.* That *Clark* refers to *Kochell* in a limited sense and that the Seventh Circuit in affirming the bankruptcy court, employed a so-called "all factors test", is a strained reason upon which to posit that this Court change controlling law in this jurisdiction, particularly when this Court does not have the authority to do so. The Third Circuit never considered the Seventh Circuit's decision in *Kochell*, as that decision was rendered some ten months following *Clark's* issuance. The *Clark* holding is clear. As Debtor here had not been receiving retirement payments from his Pension Plan, KEOGH and IRA before or on the date he filed for bankruptcy, his Pension Plan, KEOGH and IRA are not exempt from the bankrupt estate within the mean-

ing of § 522(d)(10)(E) as construed in *Clark.*

Perhaps even more troubling for Debtor is that assuming *arguendo* that *Clark* is broadly construed to incorporate the *Kochell* "all factors" test, the facts before the Court fail to warrant the exemption of his retirement funds. The Seventh Circuit in *Kochell* said of the "reasonably necessary" language contained in 11 U.S.C. § 522(d)(10)(E) that, "[t]he reasonably necessary standard requires that the Court take into account other income and exempt property of the Debtor, present and anticipated, ... and that the appropriate amount to be set aside for the Debtor ought to be sufficient to sustain basic needs, not related to his former status in society or the lifestyle to which he is accustomed". *Kochell,* 732 F.2d at 556 (*quoting In re Taff,* 10 B.R. 101, 107 (Bankr.D.Conn.1981)). Thus, the Third Circuit and Seventh Circuit are in accord on employing a "basic needs" test in § 522(d)(10)(E). The facts here do not support the finding that the retirement funds are needed to sustain the basic needs of Debtor and his dependents.

First, Debtor testified at trial of his intention to work at least until all of his children are graduated from colleges, which based upon the age of his youngest child, will have Dr. Velis working for at least five more years. Debtor's wife is approximately 49 years old and earns, as an office manager, approximately $35.00 per hour. Debtor testified that his wife's managerial skills commanded a $35.00 per hour wage and that she would be paid that same hourly rate if employed elsewhere. Hence, the facts are undisputed that Debtor and his wife earn yearly salaries of $84,000 and $72,000 respectively.[7] Second, Debtor has submitted as part of his brief a yearly budget of expenses which purports to summarize the total expenses reasonably necessary for the support of Debtor and his dependents. Total expenses from this summary are $91,590.00 and include full financing of the education costs. The Court recognizes that the total combined salary of $156,000 is a gross number and that combined disposable income will be something less than that; however, the Court does not find persuasive Debtor's contention that annual net salaries of approximately $89,600.00 are inadequate to cover yearly expenses and "sustain basic needs". Also persuasive as to the issue of need is the fact that the debtor had been able through the deferral of income to accumulate as of the petition date more than $350,000.00 in retirement funds. If a plan is filed in the immediate future the Debtor will have a span of five years during which education costs will be reducing to fund a new retirement plan. In the meantime his wife's fund remains intact and grows for the future.

It is clear to the Court, after reviewing Debtor's present needs as well as he and his wife's earnings capacities, that family income is sufficient to defray current expenses to even support Debtor's present lifestyle and the standard that he and his family have become accustomed to prior to filing for bankruptcy.

Debtor next offers the following facts in support of the exemption of his Pension Plan, KEOGH and IRA: first, that the expenses reported in the yearly budget are modest and that he and his family do not lead high lifestyles; second, that none of his children possess substantial holdings in trusts, securities or other property, nor for that matter does his wife, save for a $33,-000 IRA account, which money was borrowed to purchase the New York Co-ops, and a bank account with a nominal balance; and fourth, that neither his wife nor children own significant assets, except for one child who owns an automobile. The Court need not engage in a lengthy discussion of why it finds the above arguments unpersuasive. Suffice it to say that the Debtor and his wife have equity in their home in excess of $400,000, that their combined yearly gross salary of $156,000 is sufficient to provide a comfortable living for themselves and their family and the education of their children and finally they have even-

---

7. As noted on page 66 debtor's salary prepetition was $120,000.00. The reduction (or shift to Dorothy Velis) of income is an example of the control discussed at page 70.

tually been able, post petition, to refinance with commercial borrowing their acquisition of the two New York City co-op units.

The Court recognizes that the achievements, both professional and financial, of the Debtor and his wife are the result of dedication, hard work and sacrifice. The Court also recognizes that the determination made here has a substantially adverse impact on their future retirement plans. The purposes of the Bankruptcy Code are multiple and include not only a fresh start for debtors but also fair treatment of creditors. The Court believes that its determination accomplishes those two goals in accordance with the statute as written and intended by Congress.

Bankruptcy was not intended to avoid or remedy every harsh result whether occasioned by inadequate insurance or otherwise. By so holding, we treat the retirement funds, as did the Debtor, as his property to use without regard to ERISA or retirement income.

### CONCLUSION

For the foregoing reasons, Movant's objections to Debtor's exemptions of his interests in the Konstantin P. Velis Pension Plan and Trust, the Konstantin P. Velis Keogh Plan and the Konstantin P. Velis, M.D. Individual Retirement Account are sustained.

Movant shall submit the appropriate order within ten (10) days of the date signed hereunder.

### EPILOGUE

It appears to this Court that the intent of ERISA, the Bankruptcy Code and the concern expressed by Judge Becker in his concurring opinion in *In re Clark* as to disparate treatment of different forms of retirement plans and, as noted at page 70, the disparate treatment for different beneficiaries of the same trust based upon the control exercisable by the debtor beneficiary would be addressed if the interests of debtors in pension plans were uniformly included as property of the estate. Thereafter, a value could be placed on the debtor's interest (right to receive) whether in

the present or future. The extent, if any, of the exemption would be based upon necessity. Thus, in *Clark* and *Heisey* "necessity" would be lacking due to their age and the opportunity to re establish a fund. In this case, as noted, future income and spousal income make the "fund" unnecessary. However, in a case where the debtor is close to pay status, a determination of the amount necessary to support the debtor and his dependents could be made followed by a calculation of the present value of that need which would be exempt. To the extent that the retirement fund exceeds the need, the excess would be available for creditors.

The distinction made between the fund and the benefit in some cases does not seem appropriate as the fund depletes as the benefit is paid. The fund is in fact, the present value of the benefits to be provided. In defined benefit plans the fund is accumulated based in part on life expectancy. In defined contribution plans the fund must be distributed in full within the period of life expectancy of the participant. Thus in each case the fund in theory is fully utilized to pay the benefits.

For defined benefit plans the calculation would require inquiry into the status of funding of the entire plan to determine the extent that a debtor's interest was actually funded. The foregoing approach would seem better to address the expressed Congressional concern in granting the exemption yet recognizes that Congress did not make a distinction between "The right to receive" present or future payments. This approach would also recognize the monumental effort by Congress in the enactment of ERISA to preserve pension benefits. Finally, this approach would also address and not penalize the debtor who was fully vested in his or her pension benefit and attained normal retirement age but had deferred retirement for any of a myriad of reasons, including financial necessity, and was therefore not receiving pension payments.

Whether the foregoing will impact negatively on pension arrangements which are truly for the benefit of employees which

would include, but is not limited to, collectively bargained plans is conjectural. The impact will, of course, depend on the interpretation given the words "reasonably necessary for the support of the debtor and any dependant of the debtor" but it would seem that the goals of ERISA and the intent of Congress in providing the exemption to retirement benefits would in most cases result in no loss of benefits. Only those retirement arrangements that are excessive and noted in *Graham* should be affected.